Index No. 07 CV 10274 (JSR)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LAWRENCE FOWLER,

                                        Plaintiff,

            -against-

THE CITY OF NEW YORK, ROBERT T. JOHNSON,
District Attorney, Bronx County, and the STATE OF
NEW YORK, ELIOT SPITZER, Governor,

                                        Defendants.

## DEFENDANT CITY OF NEW YORK'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for Defendant City of New York*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Susan P. Scharfstein*
*Tel: (212) 227-4071*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................... ii

ARGUMENT ............................................................................................................... 2

     POINT I

          PLAINTIFF HAS FAILED TO DEMONSTRATE
          THE EXISTENCE OF A POLICY, CUSTOM, OR
          PRACTICE OF THE CITY OF NEW YORK SO
          AS TO SUSTAIN A MONELL CLAIM ................................................. 3

     POINT II

          PLAINTIFF HAS NOT SHOWN AN
          UNDERLYING VIOLATION OF HIS RIGHTS ....................................... 6

     POINT III

          PLAINTIFF HAS FAILED TO SHOW A VIABLE
          STATE LAW CLAIM OR WHY THIS COURT
          SHOULD RETAIN JURISDICTION OVER HIS
          STATE LAW CLAIMS ......................................................................... 9

CONCLUSION ........................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**                                                          **Pages**

Barrett v. Orange County Human Rights Comm'n,
194 F.3d 341 (2d Cir. 1999).....................................................................3

Blouin v. Spitzer,
356 F.3d 348 (2d Cir. 2004).....................................................................8

Buckley v. Fitzsimmons,
509 U.S. 259 (1993)................................................................................8

Burns v. Reed,
500 U.S. 478 (1991)................................................................................8

DeJean v. County of Nassau,
2008 U.S. Dist. LEXIS 4291 (E.D.N.Y. Jan. 8, 2008)............................4

Feerick v. Sudolnik,
816 F. Supp. 879 (S.D.N.Y.),
aff'd, 2 F.3d 403 (2d Cir. 1993)...............................................................4

Imbler v. Pachtman,
424 U.S. 409 (1976)................................................................................8

Kyles v. Whitley,
514 U.S. 419 (1995)................................................................................8

Lee v. Williams,
617 F.2d 320 (2d Cir.),
cert. denied, 449 U.S. 861 (1980)...........................................................8

Longi v. County of Suffolk,
2008 U.S. Dist. LEXIS 25468 (E.D.N.Y. Mar. 27, 2008).......................4

Monell v. Department of Social Servs.,
436 U.S. 658 (1978)......................................................................2, 3, 5, 6

People v. Crimmins,
36 N.Y.2d 230 (1975)..............................................................................5

People v. Holt,
67 N.Y.2d 819 (1986)..............................................................................5

People v. Mitchell,
82 N.Y.2d 609 (1993)..............................................................................8

## Cases

**Pages**

People v. Novoa,
    70 N.Y.2d 490 (1987) ......................................................................................5

People v. Steadman,
    82 N.Y.2d 1 (1993) ..................................................................................3, 4, 5

Peterson v. Tomaselli,
    469 F. Supp. 2d 146 (S.D.N.Y. 2007)..............................................................4

Savino v. City of New York,
    331 F.3d 63 (2d Cir. 2003)..............................................................................8

Taylor v. Kavanaugh,
    640 F.2d 450 (2d Cir. 1981)............................................................................8

Wallace v. Kato,
    127 S. Ct. 1094 (2007) ....................................................................................9

Weiss v. La Suisse, Societe D'Assurances Sur La Vie,
    293 F. Supp. 2d 397 (S.D.N.Y. 2003)............................................................6

Womack v. County of Amador,
    2008 U.S. Dist. LEXIS 17844 (E.D. Cal. Mar. 7, 2008) ...............................4

Ying Jing Gan v. City of New York,
    996 F.2d 522 (2d Cir. 1993)............................................................................8

## Statutes

§ 1983.....................................................................................................................3, 6, 9

Federal Rules of Civil Procedure, Rule 56 ............................................................1

Local Civil Rule 56.1 ...............................................................................................2

New York Criminal Procedure Law § 440.10 .......................................................2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

LAWRENCE FOWLER,

                              Plaintiff,

              -against-                                    07 CV 10274 (JSR)

THE CITY OF NEW YORK, ROBERT T.                           (filed by ECF)
JOHNSON, District Attorney, Bronx County, and
the STATE OF NEW YORK, ELIOT SPITZER,
Governor,

                              Defendants.

-------------------------------------------------------------------x

## DEFENDANT CITY OF NEW YORK'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant City of New York submits this reply memorandum of law in further support of its motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure dismissing this action with prejudice on the grounds that there is no viable claim against it as a matter of law.

In his opposition papers, plaintiff appears to argue, in essence, that the City of New York had a policy of deliberate indifference to investigating claims of innocence, and that the Bronx County District Attorney's Office and the New York City Police Department willfully failed to investigate information that could have exonerated him in connection with the 1996 murder of Lamar Jones, thereby violating his due process rights. Specifically, plaintiff claims that Assistant District Attorney Daniel McCarthy failed to investigate leads that his defense counsel, Ms. Hayes, provided to him. He alleges that, as a result, he was imprisoned for a period

of six years for which he should not have been, and was prevented from filing a motion to vacate his conviction pursuant to New York Criminal Procedure Law § 440.10. He alleges that Mr. McCarthy's actions were taken pursuant to a policy of the City of New York.

Notwithstanding these arguments, plaintiff's claims against defendant should be dismissed in their entirety because, as set forth in defendant's moving papers, plaintiff cannot prove either the existence of a policy, custom, or practice of the City of New York in keeping with <u>Monell v. Department of Social Servs.</u>, 436 U.S. 658 (1978), or an underlying violation of a constitutional right that was caused by a policy of the City. As plaintiff has failed to come forward with any evidence to support a violation of a federal right, the Court should grant defendant's motion and dismiss this action with prejudice in all respects.

## ARGUMENT

In substance, plaintiff's opposition papers consist of no more than bare assertions to the effect that Assistant District Attorney Daniel McCarthy could have done more to establish that plaintiff was innocent of the crime of which he was convicted, the murder of Lamar Jones. However, he fails either to provide evidentiary support for those claims or to link ADA McCarthy's purported acts – or lack thereof – to a policy, custom, or practice of the City of New York. He offers no legal authority or evidence that is material to the resolution of plaintiff's claims. Nor does he deny any of the statements set forth in Defendants' Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 by reference to any competent evidence in the record. As he relies only on the conclusory and self-serving allegations of his counsel and raises no genuine issue of material fact that precludes summary judgment in defendant's favor, this Court should dismiss his claims with prejudice in all respects.

**POINT I**

**PLAINTIFF HAS FAILED TO DEMONSTRATE THE EXISTENCE OF A POLICY, CUSTOM, OR PRACTICE OF THE CITY OF NEW YORK SO AS TO SUSTAIN A MONELL CLAIM**

As set forth in defendant's moving papers, plaintiff alleges a <u>Monell</u> claim pursuant to § 1983 against the City of New York. Plaintiff argues that the City's illegal policy consisted in the awareness of the police and prosecutor concerning false convictions and their failure to take corrective action vis-à-vis their obligation to correct false information presented to the courts. <u>See</u>, <u>e.g.</u>, Opposition Brief at 3. In support of his argument as to the existence of a policy, plaintiff relies on (i) the claim that ADA McCarthy acted in a policymaking role, (ii) that the decision in <u>People v. Steadman</u>, 82 N.Y.2d 1 (1993), is evidence of an illegal policy or practice, and (iii) that NYPD Interim Order No. 25 (Exhibit 16 to Hayes Declaration"), supports the existence of an illegal policy or practice. He also contends that ADA McCarthy's acts of failing and refusing to investigate leads provided by his counsel were taken pursuant to a policy of the City of New York. Opposition Brief at 5.

However, plaintiff does not identify any policy, custom, or practice that resulted in a violation of his rights. Plaintiff cannot establish municipal liability based on the bare allegation that the City or the District Attorney's office had a custom, policy, or practice of inadequate investigations or indifference to such investigations. Nor can he show that an official at a policymaking level was involved. Thus, plaintiff has established neither the existence of a formal policy nor the direct involvement of a policymaking individual. He also has not established a relationship between the alleged policy and the purported violation of his rights.

Municipal liability must be based on the specific actions of an official with final policymaking authority. <u>See</u> <u>Barrett v. Orange County Human Rights Comm'n</u>, 194 F.3d 341,

3

350 (2d Cir. 1999); Longi v. County of Suffolk, 2008 U.S. Dist. LEXIS 25468 at *21 (E.D.N.Y. Mar. 27, 2008).[1]   Yet plaintiff has come forward with no evidence to establish that ADA McCarthy was a policymaker of the City of New York. An Assistant District Attorney does not have final policymaking authority in the District Attorney's office. See, e.g., DeJean v. County of Nassau, 2008 U.S. Dist. LEXIS 4291 at *11-12 (E.D.N.Y. Jan. 8, 2008) (assistant district attorney's action with respect to particular case not the actions of a policymaker); Peterson v. Tomaselli, 469 F. Supp. 2d 146, 168-170 (S.D.N.Y. 2007) (assistant district attorney not in policymaking role while handling the particulars of a given case; granting summary judgment as to claim of municipal liability based on assistant's actions); Feerick v. Sudolnik, 816 F. Supp. 879, 886-87 (S.D.N.Y.), aff'd, 2 F.3d 403 (2d Cir. 1993) (recognizing that assistant district attorneys are not municipal policymakers and that their decisions in handling a case are individual exercises of judgment and do not reflect municipal policy; see also Womack v. County of Amador, 2008 U.S. Dist. LEXIS 17844 at *31 (E.D. Cal. Mar. 7, 2008) (deputy district attorneys do not have final policymaking authority).   ADA McCarthy's actions in handing the underlying criminal matter cannot be said to represent the actions of a policymaker responsible for an identifiable policy that caused a deprivation of a constitutional right.

To the extent that plaintiff argues that the decision in People v. Steadman, together with the incident alleged in this action, reflects a policy of the City or a pattern of misconduct by ADA McCarthy, he still fails to articulate any connection between the two. Steadman concerned an alleged failure to disclose a leniency agreement with counsel for a witness. In that case, the court held that the failure of two trial assistants, who had been

---

[1] For the Court's convenience, copies of Lexis and other unreported decisions cited in this memorandum are arranged in alphabetical order and annexed hereto as Exhibit A.

4

supervised by Mr. McCarthy, to disclose to defense counsel the existence and terms of a leniency agreement with a prosecution witness violated disclosure obligations. 82 N.Y.2d at 8. Mr. McCarthy had discussed the terms of the agreement with the witness' counsel, although the trial assistants and the witness were unaware of the agreement. The witness then testified that no leniency deal had been arranged. The court held that the disclosure of the existence of the agreement during trial did not obviate the Brady violation, that the trial court's denial of a new trial did not amount to harmless error, and that the defendant was entitled to a new trial. 82 N.Y.2d at 8-9. The events in that case thus bear no resemblance to the underlying events at issue here. Moreover, both the trial court and the Appellate Division had concluded that there was only a technical violation which had not deprived defendants of a fair trial. Accordingly, it appears that <u>People v. Steadman</u> presented at least an arguable question of law.[2]

Plaintiff's claim that NYPD Interim Order No. 25 supports a <u>Monell</u> claim because of a failure to act on information received from Pierre Moore during a May 2000 arrest (Opposition Brief at 7-8), also fails to support his claim of an illegal policy, custom, or practice of the City of New York. Plaintiff does not explain the relevance of that document to this case. He seems to argue that the police officers "classified" information received from Mr. Moore as "old news." Opposition Brief at 7. He does not articulate any flaw in the City's policy based on Interim Order No. 25, nor show how any purported violation of plaintiff's rights was related to a

---

[2] Plaintiff also cites, among other decisions, <u>People v. Holt</u>, 67 N.Y.2d 819 (1986), and <u>People v. Crimmins</u>, 36 N.Y.2d 230 (1975), although the relevance of these cases is not clear. <u>See</u> Opposition Brief at 6. They appear to stand generally for the proposition that a criminal defendant is entitled to a fair trial, a matter that is not in dispute in this case. Similarly, <u>People v. Novoa</u>, 70 N.Y.2d 490 (1987), holds that a prosecutor cannot remain silent and leave uncorrected testimony that he or she knows to be false, as doing so would deprive a defendant of a fair trial. However, plaintiff has offered no evidence of a policy of failing to disclose evidence or knowingly failing to correct misstatements in the testimony of witnesses.

procedure set forth in that document. Nor has he offered any concrete evidence that any City employee failed to act in conformance with its terms.

Plaintiff's conclusory allegations fall far short of demonstrating a policy, custom, or practice of deliberate indifference to the rights of persons who were investigated and prosecuted by the New York City Police Department and the Bronx County District Attorney's office, or that either of these entities instituted inadequate policies concerning disclosure of evidence and failing to properly train, supervise, and discipline employees. His bare allegations aside, he has produced no evidence of the existence of a custom, policy, or practice to which a violation of his rights was attributable in keeping with the requirements of Monell, so as to sustain a § 1983 claim against defendant City of New York. As plaintiff has failed to come forward with proof in evidentiary form that raises an issue of fact sufficient for a reasonable jury to find in his favor, as he must to defeat summary judgment, see Weiss v. La Suisse, Societe D'Assurances Sur La Vie, 293 F. Supp. 2d 397, 408 (S.D.N.Y. 2003), defendant's motion should be granted in all respects for this reason alone.

## POINT II

### PLAINTIFF HAS NOT SHOWN AN UNDERLYING VIOLATION OF HIS RIGHTS

Plaintiff alleges that his due process rights were violated in connection with the prosecutor's handling of the underlying criminal matter. He contends that, beginning at or around the time of his criminal trial, and during the period from 2000 to 2005, his counsel supplied and continued to supply witnesses and other specific information that should have demonstrated that plaintiff was not guilty of the murder of Mr. Jones, but that ADA McCarthy refused to investigate any such leads despite having the ability to do so. Opposition Brief at 4-5.

Specifically, he claims that ADA McCarthy deliberately failed to investigate information given to him by plaintiff's counsel in May of 2000, concerning the perpetrator of the

6

crime for which plaintiff had been convicted that was allegedly provided to police officers by a witness named Pierre Moore. Opposition Brief at 3-4. He contends that ADA McCarthy thereby violated his obligation as a prosecutor to correct false information by a witness who had provided inaccurate testimony, and was deliberately indifferent to the existence of exculpatory information and the need to follow up on information proffered by his attorney. Opposition Brief at 3-4. He claims that his due process rights were thereby violated. Opposition Brief at 8-9. He argues that Mr. McCarthy's statements during the May 8, 2008 conference in this matter and other information supports this claim.[3] Plaintiff nevertheless has not shown, and cannot prove, an underlying violation of his rights as a consequence of any acts or omissions of ADA McCarthy. Therefore, his <u>Monell</u> claim fails for this additional and independent reason.

      As an initial matter, ADA McCarthy's duty to disclose exculpatory information to defense counsel pursuant to <u>People v. Brady</u> does not extend to investigating every lead. It is evident from plaintiff's papers that his counsel was aware of the information that she relayed to ADA McCarthy, and that she also made her own efforts to pursue the leads. She even states that her investigator interviewed the purported witness, Pierre Moore, and that the latter refused to sign a sworn statement exculpating plaintiff. <u>See</u> Exhibit 11 to the Affidavit of Pamela Hayes dated June 10, 2008. Nor has plaintiff demonstrated that ADA McCarthy "refused" to investigate the lead, as he asserts (Opposition Brief at 4), or that he could have located Mr. Moore, when plaintiff's attorney and Mr. Moore's attorney had made efforts to locate him and

---

[3] As the Court is aware, Mr. McCarthy's statements were not "sworn testimony" as plaintiff states. <u>Compare</u> the transcript of the May 8 conference at 11 (Exhibit 19 to the Affidavit of Pamela Hayes dated June 10, 2008), <u>with</u> Opposition Brief at 8.

had had difficulty doing so.[4]  To the extent that plaintiff argues that ADA McCarthy did not fulfill his responsibilities as a prosecutor, a prosecutor has absolute immunity from liability in his prosecutorial role.  See, e.g., Burns v. Reed, 500 U.S. 478, 486 (1991) (citing Imbler v. Pachtman, 424 U.S. 409, 430-431 (1976)); Ying Jing Gan v. City of New York, 996 F.2d 522, 530 (2d Cir. 1993).[5]  Alternatively, he would be entitled to qualified immunity from suit.  See, e.g., Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993); Blouin v. Spitzer, 356 F.3d 348, 357, 360-61 (2d Cir. 2004).

Moreover, even had ADA McCarthy known of information that actually had demonstrated plaintiff's innocence, he had no duty to present every item of arguably exculpatory evidence.  For example, in seeking an indictment, he had the discretion and authority to decide what evidence to present to the grand jury as a matter of law.  Savino v. City of New York, 331 F.3d 63, 75 (2d Cir. 2003) (citing People v. Mitchell, 82 N.Y.2d 609, 515 (1993) ("The People maintain broad discretion is presenting their case to the Grand Jury and need not seek evidence

---

[4] Plaintiff claims that ADA McCarthy could have interviewed Mr. Moore and refused to do so.  Opposition Brief at 4.  However, he fails to explain how Mr. McCarthy could have done so or why he was required to do so.  Indeed, plaintiff concedes that his counsel believed that that Mr. Moore had claimed to have had information about the Jones murder, as she produced that information to ADA McCarthy, and that Mr. Moore refused to speak with plaintiff's counsel even after his own counsel had written to Mr. Moore in an attempt to assist her.  Opposition Brief at 4.  Plaintiff also has not explained how ADA McCarthy would have had access to Mr. Moore or required him to be forthcoming, or how any interview with Mr. Moore would have been productive.  Among other things, the decision in Kyles v. Whitley, 514 U.S. 419 (1995), on which plaintiff relies, is inapposite in that it concerns the nondisclosure by a prosecutor of evidence in a criminal matter that was demonstrated to have created a reasonable probability that there would have been a different result had the information been disclosed.

[5] This doctrine applies where the actions are a part of a prosecutor's traditional adversarial functions.  See, e.g., Taylor v. Kavanaugh, 640 F.2d 450, 452 (2d Cir. 1981) (absolute immunity for prosecutor in plea bargaining and sentencing proceedings); Lee v. Williams, 617 F.2d 320, 322 (2d Cir.), cert. denied, 449 U.S. 861 (1980) (absolute immunity for prosecutor for alleged falsification of evidence and coercion of perjured testimony).

favorable to the defendant or present all of their evidence tending to exculpate the accused")).

Accordingly, there was no violation of any due process right.[6]

Although plaintiff argues that the information relayed by the U.S. Attorney's Office in 2006, "amounted to the same information" that plaintiff's counsel provided during the period from May 2000 through 2005 (Opposition Brief at 9-10), he has not demonstrated that this claim has any substance.[7]  Accordingly, plaintiff's claim against defendant is fatally flawed and this action should be dismissed for the additional reason that plaintiff can show no underlying violation of a constitutional right.

## POINT III

### PLAINTIFF HAS FAILED TO SHOW A VIABLE STATE LAW CLAIM OR WHY THIS COURT SHOULD RETAIN JURISDICTION OVER HIS STATE LAW CLAIMS

This Court also should dismiss plaintiff's state law claims or decline jurisdiction over any such claims.  Not only are those claims barred for plaintiff's failure to comply with notice of claim requirements, but they also should be dismissed on the merits for the same reasons as plaintiff's federal claims as set forth in defendants' moving papers.

---

[6] Plaintiff appears to have abandoned his claims for false arrest and malicious prosecution.  In any event, those claims are barred from the reasons set forth in defendants' moving papers.  The false arrest claim is barred for the additional reasons that it is time barred, as a § 1983 claim for false arrest begins to accrue no later than at the time of arraignment.  Wallace v. Kato, 127 S. Ct. 1094, 1097 (2007).

[7] See May 8, 2008 letter from John M. McEnany to counsel, stating that the U.S. Attorney's Office is "virtually certain" that the information in question was not and could not have been known to the NYPD or the Bronx County District Attorney's Office at the time of the trial in People v. Fowler or at any time until in was communicated by the U.S. Attorney's Office in approximately June of 2006, and Exhibit 19 to the Declaration of Pamela Hayes, transcript of May 8, 2008 conference at 12.

## **CONCLUSION**

For these reasons, as well as those set forth in defendant's moving papers, defendant's motion for summary judgment should be granted in all respects.

Dated:          New York, New York
                June 25, 2008

                                MICHAEL A. CARDOZO
                                Corporation Counsel of the City of New York
                                Attorney for Defendant City of New York
                                100 Church Street
                                New York, NY  10007
                                (212) 227-4071


                                By: _____/S/_____
                                    SUSAN P. SCHARFSTEIN

10

3 of 12 DOCUMENTS

**PATRICK DEJEAN, Plaintiff, -against- COUNTY OF NASSAU, KATHLEEN RICE, District Attorney, individually and in her official capacity, STEVEN L. SCHWARTZ, Assistant District Attorney, individually and in his official capacity, GREGORY HECHT, Associate Court Clerk of the District Court of Nassau County, individually and in his official capacity, Defendants.**

CV-06-6317 (SJF)(AKT)

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK**

*2008 U.S. Dist. LEXIS 4291*

**January 8, 2008, Decided**
**January 8, 2008, Filed**

**PRIOR HISTORY:** *DeJean v. County of Nassau, 2007 U.S. Dist. LEXIS 93251 (E.D.N.Y., Dec. 18, 2007)*

**COUNSEL:** [*1] Patrick DeJean, Plaintiff, Pro se, Auburn, NY.

For County of Nassau, Kathleen Rice, District Attorney, individually and in her official capacity, Steven L. Schwartz, Assistant District Attorney, individually and in his official capacity, Defendants: Sondra M. Mendelson, LEAD ATTORNEY, Nassau County Attorneys Office, Mineola, NY.

For Gregory Hecht, Associate Court Clerk of the District Court of Nassau County, individually and in his official capacity, Defendant: Toni E. Logue, LEAD ATTORNEY, NYS Attorney General's Office, Mineola, NY.

**JUDGES:** SANDRA J. FEUERSTEIN, United States District Judge.

**OPINION BY:** SANDRA J. FEUERSTEIN

**OPINION**

**OPINION & ORDER**

FEUERSTEIN, J.

On November 20, 2006, *pro se* plaintiff Patrick De-Jean (plaintiff) commenced this action against the County of Nassau (the County), Kathleen Rice (Rice), the Nassau County District Attorney, Steven L. Schwartz (Schwartz), Assistant District Attorney (collectively, the County defendants), and Gregory Hecht (Hecht), Associ-

ate Court Clerk of the District Court of Nassau County [1], all in their individual and official capacities, alleging violations of *42 U.S.C. § 1983*. The County defendants now move pursuant to *Rule 12(c) of the Federal Rules of Civil Procedure* [*2] for judgment on the pleadings. Plaintiff has not opposed the motion. For the reasons stated herein, the County defendants' motion is granted.

> 1   By order dated October 25, 2007, I granted Hecht's motion for judgment on the pleadings and dismissed the complaint as against him.

I. Background

A. Factual Background [2]

> 2   As is required on a motion pursuant to *Rule 12(c) of the Federal Rules of Civil Procedure*, the factual allegations in the complaint, though disputed by defendants, are accepted to be true for purposes of this motion, and all reasonable inferences are drawn therefrom in favor of plaintiff. They do not constitute findings of fact by this court.

Plaintiff alleges that on September 25, 2005, he was arrested by Detective Fredrick Penna (Penna) of the Nassau County Police Department (NCPD), "and charged with leaving the scene of a fatal accident which allegations and charges wer [sic] untrue." (Complaint [Compl.], P 5).

Plaintiff alleges that on August 24, 2006 [3], he attempted to file criminal charges against Penna for perjury, official misconduct, tampering with public records, and offering a false instrument for filing with the Nassau

County District Court (the District Court) relating [*3] to Penna's filing of criminal complaints against plaintiff allegedly containing false statements. (Compl., P 6). According to plaintiff, he mailed four (4) misdemeanor complaints to the District Court for filing. (Id.).

> 3    Although the complaint sets forth the date as August 24, 2005, that date is clearly incorrect.

Plaintiff alleges that on October 4, 2006, Hecht returned his misdemeanor complaints and informed him that the District Attorney's Office, and, specifically, defendant Schwartz, had informed him that they had declined to prosecute plaintiff's misdemeanor complaints pursuant to *N.Y. C.P.L. § 160.50(3)(i)*. (Compl., P 7).

B. Procedural History

On November 20, 2006, plaintiff commenced this civil rights action against the County defendants and Hecht [4] pursuant to *42 U.S.C. § 1983*, alleging, *inter alia*, that the County defendants violated his *First* and *Fourteenth Amendment* rights to access to the courts and equal protection of the law (1) by interfering with his right to file misdemeanor complaints and commence a criminal proceeding (second cause of action); (2) by having a "policy, custom and practice which shield police officers, who commit perjury and other criminal acts during [*4] arrest and filing of criminal complaints, from criminal liability against criminal complaints filed by plaintiff * * *." (third and fifth causes of action); and (3) by screening plaintiff's misdemeanor complaints and "circumvent[ing] them from being filed with the District Court pursuant to defendants' [aforementioned] policy, custom and practice," (fourth cause of action).

> 4    At all relevant times, Hecht was an Associate Court Clerk, and, thus, was an employee of the State of New York.

The County defendants now move pursuant to *Rule 12(c) of the Federal Rules of Civil Procedure* for judgment on the pleadings.

II. Discussion

A. Standard of Review

In deciding a *Rule 12(c)* motion, the same standard as that applicable to a motion under *Rule 12(b)(6)* is applied. See *Desiano v. Warner-Lambert & Co., 467 F.3d 85,89 (2d Cir. 2006)*. A motion made pursuant to *Rule 12(b)(6) of the Federal Rules of Civil Procedure* should be granted only when a plaintiff pleads sufficient facts "to state a claim for relief that is plausible on its face." In *Bell Atlantic Corp. v. Twombly,    U.S.    . 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)*. The pleading of

specific facts is not required; rather a complaint need [*5] only give the defendant "fair notice of what the * * * claim is and the grounds upon which it rests." *Erickson v. Pardus.    U.S.    . 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007)*. A "formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic, 127 S.Ct. at 1959*. Accordingly, the applicable standard on a motion to dismiss pursuant to *Rule 12(b)(6)* requires, at least, allegations "plausibly suggesting (not merely consistent with)," liability. *Williams v. Berkshire Financial Group, Inc., 491 F.Supp.2d 320, 324 (E.D.N.Y. 2007)*.

In determining a motion pursuant to *Rule 12(c)*, the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. See, *Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 44 (2d Cir. 2003)*; see also *Roth v. Jennings, 489 F.3d 499, 510 (2d Cir. 2007)*. Moreover, a court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the [*6] strongest arguments that they suggest.'" *McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999)* (quoting *Burgos v. Hopkins, 14 F.3d 787, 790 [2d Cir. 1994]*). Nonetheless, a *pro se* plaintiff is not exempt from compliance with relevant rules of procedural and substantive law. *Traguth v. Zuck, 710 F.2d 90, 92 (2d Cir. 1983)*.

B. *42 U.S.C. § 1983* Claims [5]

> 5    *42 U.S.C. § 1983* provides, in pertinent part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the parry injured in an action at law, suit in equity, or other proper proceeding for redress* * *."

1. Municipal Liability (Monell Claims)

The County defendants contend that plaintiff cannot establish municipal liability against the County based on his assertion that the District Attorney's Office has a custom, policy and/or practice which precludes consideration of criminal charges brought by an accused against police [*7] officers, and insulates from investigation and criminal liability police officers who allegedly commit perjury and other criminal acts when a pretrial detainee brings charges against them.

A municipality or municipal entity cannot be held liable under *§ 1983* on a *respondeat superior* theory. See. *Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Linder v. City of New York, 263 F.Supp.2d 585, 591 (E.D.N.Y. 2003).* A municipal entity may only be held liable if the alleged offending conduct was undertaken pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipal] officers[,] * * * [or] governmental 'custom' even though such a custom has not received formal approval through the [municipality's] official decisionmaking [sic] channels." *Monell, 436 U.S. at 690, 98 S.Ct. 2018.* The plaintiff must show a "direct causal link between a municipal policy or custom, and the alleged constitutional deprivation." *City of Canton v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).*

To establish the existence of a municipal policy or custom, the plaintiff must [*8] allege (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with the municipal employees. *Moray v. City of Yonkers, 924 F.Supp. 8, 12 (S.D.N.Y. 1996);* see also *Davis v. Lynbrook Police Dep't, 224 F.Supp.2d 463, 478 (E.D.N.Y. 2002).* Monell claims are not subject to a heightened pleading standard and need only comply with the notice pleading requirement of *Rule 8(a)(2) of the Federal Rules of Civil Procedure,* i.e. that it include "a short and plain statement of the claim showing that the pleader is entitled to relief." *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).*

Plaintiff does not allege [*9] the existence of a formal policy officially endorsed by the County or that the County took any direct action with respect to the conduct alleged in the complaint. Thus, municipal liability, if any, must be based on the specific actions of an official with final policymaking authority. See *Barrett v. Orange County Human Rights Commission, 194 F.3d 341, 350 (2d Cir. 1999).* In this respect, the County can only be held liable for the actions of its own policymakers. See *Myers v. County of Orange, 157 F.3d 66, 76 (2d Cir. 1998).*

a. Liability based upon Rice's Conduct

To the extent plaintiff's Monell claims are based on allegations that Rice, as an official with final decision-making authority, was implicated in the decision not to bring charges against Penna, those claims are insufficient to establish municipal liability against the County. Under New York law, district attorneys and assistant district attorneys are generally presumed to be local county officers, not state officers. See *N.Y. Pub. Off. Law § 2; N.Y. County Law § 53(1); Myers, 157 F.3d at 76.* However, a narrow exception exists to this general rule, which provides that when a district attorney makes a determination to prosecute [*10] or not to prosecute a criminal matter, he or she acts in a quasi-judicial capacity and represents the State, not the County. See *Baez v. Hennessy, 853 F.2d 73 (2d Cir. 1988);* see also *Myers, 157 F.3d at 76; Ying Jing Gan v. City of New York, 996 F.2d 522, 536 (2d Cir. 1993).* Thus, the County cannot be held liable for the actions of Rice, if any, in the decision not to prosecute Penna.

However, to the extent plaintiff's Monell claims are based on the administration of the district attorney's office, the district attorney is treated not as a state official, but rather as an official of the municipality to which he or she is assigned. *Gan, 996 F.2d at 536; Walker v. City of New York, 974 F.2d 293, 301 (2d Cir. 1992).* Thus, to the extent plaintiff's complaint alleges that the district attorney's office had a policy of suborning perjury, ignoring evidence of police misconduct and sanctioning and concealing police misconduct or wrongdoing, Rice may be considered a county policymaker for whose actions the county may be held liable. See, e.g. *Myers, 157 F.3d at 77* (finding that where a district attorney implements an unconstitutional policy directing a police department and assistant district [*11] attorneys not to entertain cross-complaints, that policy is imputed to the county); *Gentile v. County of Suffolk, 926 F.2d 142, 152 n. 5 (2d Cir. 1991)* (holding that a municipality could be held liable upon the county's long history of negligent disciplinary practices regarding law enforcement personnel, which gave rise to the individual defendants' conduct in promoting the malicious prosecution of plaintiffs).

b. Liability based Upon Schwartz's Conduct

Municipal liability may not be based solely on the misconduct of non-supervisory employees. See *Monell, 436 U.S. at 691, 98 S.Ct. 2018.* "[O]nly actions by officials relatively high up in the municipal hierarchy will produce municipal liability." *Walker, 974 F.2d at 297, 1992.* Whether an official has final policymaking authority is a question of law for the court. See *Jett v. Dallas Independent School District, 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989).* "An official has final [policymaking] authority if his decisions, at the time they are made, for practical or legal reasons consti-

tute the municipality's final decisions." *Anthony v. City of New York*, 339 F.3d 129, 139 (2d Cir. 2003).

Plaintiff has not alleged that Schwartz, [*12] as opposed to Rice, had any policymaking role in the district attorney's office, or that the actions he took in declining to prosecute plaintiff's misdemeanor complaints were undertaken in any supervisory capacity. Accordingly, Schwartz's alleged actions cannot be said to represent the actions of a policymaker responsible for the alleged policy that caused plaintiff's constitutional deprivation. See, e.g. *Feerick v. Sudolnik*, 816 F.Supp. 879, 886-887 (S.D.N.Y. 1993), aff'd, 2 F.3d 403 (2d Cir. 1993) (dismissing the plaintiff's claims against the assistant district attorneys on the basis that they were not municipal policymakers); *Peterson v. Tomaselli*, 469 F.Supp.2d 146,169-170 (S.D.N.Y. 2007) (granting summary judgment as to the plaintiff's claims of municipal liability based on the actions of the assistant district attorney). Therefore, to the extent plaintiff's claims of municipal liability are based on the actions of Schwartz, those claims are dismissed.

### 2. Official Capacity Claims

#### a. *Eleventh Amendment*

To the extent plaintiff's claims against Rice in her official capacity are based on allegations that she was implicated in the decision not to prosecute Penna, those claims are barred [*13] by the *Eleventh Amendment*. The *Eleventh Amendment of the United States Constitution* bars suits for damages in a federal court by private parties against a state or one of its agencies, absent consent to suit or an express statutory waiver of immunity. *Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 362, 121 S. Ct. 955, 148 L. Ed. 2d 866 (2001); *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996). Moreover, a suit against a state official in his or her official capacity is not a suit against the official personally, but rather is a suit against the official's office and, thus, is no different from a suit against the State itself. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Since the State of New York has not consented to suit in federal court, see, e.g., *Le Grand v. Evan*, 702 F.2d 415, 417 (2d Cir. 1983) (holding that by virtue of the *Eleventh Amendment*, the State of New York is immune from a suit for damages under *section 1983*), plaintiff's claims against Rice in her official capacity are barred by the *Eleventh Amendment*. See, e.g. *Gan*, 996 F.2d at 536 (holding [*14] that to the extent the complaint alleged that the District Attorney was implicated in the decision not to bring criminal charges, he was properly deemed to be an official of New York State and was entitled to invoke *Eleventh Amendment* immunity).

#### b. Remaining Official Capacity Claims

"[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell*, 436 U.S. at 691, 98 S.Ct. 2018. "Based upon the understanding that it is duplicative to name both a government entity and the entity's employees in their official capacity, courts have routinely dismissed corresponding claims against individuals named in their official capacity as 'redundant and an inefficient use of judicial resources.'" *Escobar v. City of New York*, No. 1:05-cv-3030, 2007 U.S. Dist. LEXIS 45952, 2007 WL 1827414, at * 3 (E.D.N.Y. June 25, 2007) (citing cases). Since the County is named in the complaint, the claims against Rice and Schwartz, in their official capacities, are dismissed as duplicative and redundant. See, e.g. *Drees v. County of Suffolk*, No. 06-CV-3298, 2007 U.S. Dist. LEXIS 46618, 2007 WL 1875623, at * 19 (E.D.N.Y. June 27, 2007) (dismissing the claims against the individual defendants in [*15] their official capacities as duplicative of the Monell claim against the County); *Olson v. State of New York*, No. 04-CV-0419, 2005 U.S. Dist. LEXIS 44929, 2005 WL 5885368, at * 2 (E.D.N.Y. Mar. 9, 2005).

### 3. Immunity

Prosecutors enjoy absolute immunity from liability under *Section 1983* in suits seeking damages for acts carried out in their prosecutorial capacities. *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Parkinson v. Cozzolino*, 238 F.3d 145, 150 (2d Cir. 2001); *Dory v. Ryan*, 25 F.3d 81 (2d Cir. 1994), including the decision to withhold or commence a prosecution. See *Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005) (holding that the prosecutor has absolute immunity for the initiation and conduct of a prosecution unless he proceeds in the clear absence of all jurisdiction); *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1148 (2d Cir. 1995) ("absolute immunity extends to those acts, whether in or out of the courtroom, 'which occur in the course of the [prosecutor's] role as an advocate for the State'") (internal citation omitted). Once absolute immunity attaches, it "attaches to [the prosecutor's] function, not the manner in which he performed it. * * * Accordingly, a prosecutor's [*16] motivation, and whether preferable alternatives to the actions taken were available, are irrelevant." *Parkinson*, 238 F.3d at 150 (internal quotations and citations omitted); see also *Shmueli*, 424 F.3d at 237 (holding that once the court determines that the challenged prosecution was not clearly beyond the prosecutor's jurisdiction, the prosecutor is shielded from liability for damages for commencing and pursuing the prosecution, regardless of any allegations that his actions were undertaken with an improper state of mind or improper motive). To the extent plaintiff's claims against Rice and Schwartz relate to the performance of tasks

undertaken by them as advocates of the State, they were not undertaken in a complete absence of all jurisdiction and, thus, Rice and Schwartz are immune from suit.

### 4. *First Amendment* Claims

In any event, plaintiff's *First Amendment* claims fail because the alleged conduct of Rice, Schwartz and the County has not deprived plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. To state a claim under *Section 1983*, a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person [*17] acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Adickes v. S.H. Kress & Co., 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)*.

"Criminal prosecutions are within the exclusive province of the public prosecutor who has complete discretion over the decision to initiate, continue or cease prosecution." *Yashaahla v. M.H.A.N.Y. No. 05-CV-4963, 2006 U.S. Dist. LEXIS 22486, 2006 WL 845586, at *1 (E.D.N.Y. Mar. 29, 2006)* (citations omitted). A private citizen does not have a constitutional right to initiate or to compel the initiation of criminal proceedings against another individual. See *Leeke v. Timmerman, 454 U.S. 83, 102 S.Ct. 69, 70 L.Ed.2d 65 (1981)*; *Linda R.S. v. Richard D., 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973)*; *Ostrowski v. Mehltretter, 20 Fed. Appx. 87 (2d Cir. 2001)*. This considered, it is clear that Rice's, Schwartz's and the County's alleged actions (or inactions) in no way infringed upon any of plaintiff's *First Amendment* rights. See *Price v. Hasly, No. 04-CV-905, 2004 U.S. Dist. LEXIS 29764, 2004 WL 1305744, at *2 (W.D.N.Y. June 8.2004)*; *Lis v. Leahy, No. 90-CV-834E, 1991 U.S. Dist. LEXIS 21749, 1991 WL 99060, at * 1 (W.D.N.Y. June 3, 1991)*. [*18] Therefore, plaintiff cannot maintain a *Section 1983* action against any of the defendants with respect to his *First Amendment* claims. Accordingly, plaintiff's *First Amendment* claims are dismissed in their entirety.

### 5. Equal Protection Claims

Likewise, plaintiff has not stated a viable equal protection claim. To establish an equal protection violation, a plaintiff must show purposeful discrimination by the defendants directed at an identifiable or suspect class. See, *Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995)*. Although an equal protection violation may be based on a "class of one, where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment," see, *Kramer v. City of New York, No. 04 Civ. 106, 2004 U.S. Dist. LEXIS 21914, 2004 WL 2429811, at * 5 (S.D.N.Y. Nov. 1, 2004)* (citing *Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 [2000]*), plaintiff has failed to allege any such unequal treatment. Plaintiff's failure to allege that he was treated differently from similarly situated individuals is fatal to his equal protection claim. See, *Jackson v. Mann, 196 F.3d 316, 321 (2d Cir. 1999)*; [*19] see also *Caracciola v. City of New York, No. 95 Civ. 3896, 1999 U.S. Dist. LEXIS 2983, 1999 WL 144481, at * 6 (S.D.N.Y. Mar. 17, 1999)* (holding that plaintiffs' equal protection claims were frivolous where they failed to allege that they were members of a protected group, and they failed to relate specific instances where other persons similarly situated were treated differently or where they were singled out for unlawful treatment). Accordingly, plaintiff's equal protection claims are dismissed in their entirety.

### III. Conclusion

For the reasons stated herein, the County defendants' motion is granted and the complaint is dismissed in its entirety.

SO ORDERED

/s/ Sandra J. Feuerstein

SANDRA J. FEUERSTEIN

United States District Judge

Dated: January 8, 2008

Central Islip, N.Y.

2 of 12 DOCUMENTS

**THOMAS M. LONGI, Plaintiff, -against- COUNTY OF SUFFOLK, et al., Defendants.**

**CV-02-5821 (SJF)(WDW)**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK**

*2008 U.S. Dist. LEXIS 25468*

**March 27, 2008, Decided
March 27, 2008, Filed**

**PRIOR HISTORY:** *Longi v. County of Suffolk, 2006 U.S. Dist. LEXIS 85326 (E.D.N.Y., Nov. 22, 2006)*

**COUNSEL:** **[*1]** Thomas M. Longi, Plaintiff, Pro se, Shirley, NY.

For State of New York, George Pataki, Defendants: Toni E. Logue, LEAD ATTORNEY, NYS Attorney General's Office, Mineola, NY.

For County of Suffolk, Thomas Spota Suffolk County District Attorney, Suffolk County Sheriff's Department, Suffolk County Police Internal Affairs Division, Suffolk County Police Department Fifth Precinct, Suffolk County Police Department Third Precinct, Suffolk County Legislature, Suffolk County Department of Consumer Affairs, Detective Calabrese, Suffolk County Detective, C.O. Gardner, Suffolk County Detective, Robert Gaffney, Suffolk County Executive, Defendants: Robert A. Caccese, LEAD ATTORNEY, Suffolk County Attorney's Office, Hauppauge, NY.

For Town of Brookhaven, Felix Grucci, Defendants: Thaddeus John Rozanski, LEAD ATTORNEY, Kral, Clerkin, Redmond, Ryan, Perry & Girvan, LLP, Mineola, NY.

For Complete RV Sales and Service, Defendant: Patricia Byrne Blair, LEAD ATTORNEY, Mazzei & Blair, Blue Point, NY.

For Tag Motors & RV Sales & Service, Specialized Insurance, George Gomes, Richard Rossi, John Langdon, Nancy Langdon, Douglas Jones, Grubb & Ellis, Defendants: William A. Kowalenko, LEAD ATTORNEY, William Alan **[*2]** Kowalensko, P.C., Patchogue, NY.

For Grand AM RV Sales and Service, Defendant: Vincent D. McNamara, LEAD ATTORNEY, The Law Office of Vincent D. McNamara, East Norwich, NY.

For Great American Insurance Company, Defendant: Anthony M. Napoli, LEAD ATTORNEY, Thomas M. Bona, White Plains, NY; David J. Tetlak, LEAD ATTORNEY, The Law Office of David J. Tetlak, Westbury, NY.

For North Fork Bank, MBA Insurance, Defendants: Cara M. Goldstein, Ronald M. Terenzi, LEAD ATTORNEYS, Berkman, Henoch, Peterson & Peddy, P.C., Garden City, NY.

For Fleetwood Credit Corp., Defendant: Lance Perez, LEAD ATTORNEY, Maimone & Associates, PLLC, Mineola, NY.

For Verizon New York Inc., Defendant: Carol R. Abramson, LEAD ATTORNEY, Carol R. Abramson, Esq., New York, NY; Michael Baranowitz, LEAD ATTORNEY, Montfort Healy McGuire & Salley, Garden City, NY.

For Teamsters Local 817, Defendant: Marc Rowin, LEAD ATTORNEY, Lynch Rowin LLP, New York, NY; Nathan V. Bishop, LEAD ATTORNEY, Friedman & Wolf, New York, NY.

For Local Vice-President Thomas, O'Donnell, Jr., Local President Thomas, O'Donnell, Sr., Defendants: Nathan V. Bishop, LEAD ATTORNEY, Friedman & Wolf, New York, NY.

2008 U.S. Dist. LEXIS 25468, *

For Safari Motor Coach Corporation, Defendant: Theodore [*3] Michael Eder, Segal McCambridge Singer & Mahoney, New York, NY.

For Republic Western Insurance Company, Defendant: Ira S. Lipsius, Schindel, Farman & Lipsius, LLP, New York, NY.

For John Kanas, Defendant: Ronald M. Terenzi, Berkman, Henoch, Peterson & Peddy, P.C., Garden City, NY.

For Agent Peter Grupe, Agent Joseph Fanning, Sr., Junior Joseph Fanning, Defendants: Kevin Patrick Mulry, United States Attorneys Office, Eastern District of New York, Central Islip, NY.

For Jan Burman, Defendant: Steven Jay Eisman, LEAD ATTORNEY, Abrams Fensterman et al, New Hyde Park, NY.

For First Industrial Reality Trust, Defendant: Wanda Borges, LEAD ATTORNEY, Borges & Associates, LLC, Syosset, NY.

For Richard Seiler, Defendant: William J. Candee, IV, LEAD ATTORNEY, New York, NY.

For Jack O'Connor, Defendant: Kevin E. Balfe, LEAD ATTORNEY, Balfe & Holland, PC, Melville, NY.

For Chris Kelly, Twomey, Latham, Shane and Kelly, Defendants: Carol A. Lastorino, LEAD ATTORNEY, Rivkin Radler, LLP, Uniondale, NY.

For Riverhead Community Development Agency, Andrea Lohneise, Vincent Villella, James Stark, Town Of Riverhead, Defendants: Thomas Sledjeski, II, LEAD ATTORNEY, Thomas C. Sledjeski & Associates, PLLC, Riverhead, [*4] NY.

For Elliot Spitzer, New York State Attorney General, Defendant: Susan M. Connolly, N.Y.S. Office of the Attorney General, Hauppauge, NY.

For Christopher Kelley, Defendant: Carol R. Abramson, LEAD ATTORNEY, Carol R. Abramson, Esq., New York, NY.

For Grand AM RV Sales and Service, Cross Claimant: Anthony Marino, LEAD ATTORNEY, Law Offices of Vincent D. McNamara, East Norwich, NY.

For AT&T Teamsters Local 817, Cross Defendant: Marc Rowin, Lynch Rowin LLP, New York, NY.

For County of Suffolk, Thomas Spota, Suffolk County District Attorney, Cross Defendants: Robert A. Caccese, LEAD ATTORNEY, Suffolk County Attorney's Office, Hauppauge, NY.

For Great American Insurance Companies, Cross Defendant: Anthony M. Napoli, LEAD ATTORNEY, Thomas M. Bona, White Plains, NY.

For MBA Insurance, Cross Defendant: Cara M. Goldstein, Ronald M. Terenzi, Berkman, Henoch, Peterson & Peddy, P.C., Garden City, NY.

For Tag Motors & RV Sales & Service, Cross Defendant: William A. Kowalenko, William Alan Kowalensko, P.C., Patchogue, NY.

**JUDGES:** SANDRA J. FEUERSTEIN, United States District Judge.

**OPINION BY:** SANDRA J. FEUERSTEIN

**OPINION**

**OPINION & ORDER**

FEUERSTEIN, J.

On November 1, 2002, plaintiff Thomas Longi (plaintiff) and his wife Dianne Longi (Dianne) [*5] commenced this action pursuant to, *inter alia, 42 U.S.C. § 1983* alleging constitutional violations by numerous defendants. By order dated June 26, 2006, I granted the motions of various defendants to dismiss, for judgment on the pleadings and/or for summary judgment and dismissed the majority of plaintiff's claims. Dianne's claims were dismissed in their entirety on November 28, 2006 and plaintiff settled or discontinued his claims as against certain of the remaining defendants.[1] Thereafter the following claims remained: (1) certain claims against the County of Suffolk, the Suffolk County District Attorney, the Suffolk County Police Department (SCPD) Fifth Precinct and District Attorney Investigators Peter Calabrese and Robert Gardner (collectively, the County defendants)[2]; (2) the *section 1983* conspiracy claims and fraud claims against the Town of Riverhead, the Town of Riverhead Community Development Agency, Andrea Lohneiss ilslh Andrea Lohneise, Vincent Villella, and James Stark (collectively, the Riverhead defendants); and (3) the fraud claims against Tag Motors & RV Sales and Service, George Gomes, Richard Rossi and Douglas Jones (collectively, the Tag Motor defendants). The [*6] remaining defendants now move, pursuant to *Rule 56 of the Federal Rules of Civil Procedure*, for summary judgment dismissing the remaining claims against them and plaintiff cross-moves, inter alia, for summary judg-

ment in his favor. For the reasons set forth herein, defendants' motions are granted and plaintiff's cross motion is dismissed.

1   The claims against Grubb & Ellis, Twomey, Latham, Shane and Kelley and Christopher Kelley were settled on or about November 29, 2006 and the claims were dismissed with prejudice as against those defendants on March 14, 2007; the claims against Jack O'Connor and Grand Am RV Sales and Service were settled on or about November 29, 2006; the claims against Bowman were dismissed with prejudice by order dated November 28,2006; the claims against First Industrial Realty Trust were discontinued with prejudice by stipulation dated January 4, 2007; the claims against Burman and Safari Motor Coach were dismissed for lack of jurisdiction on November 28, 2006; the claims against Complete RV Sales and Service were dismissed with prejudice by order dated January 10, 2007; the claims against Great American Insurance Company were discontinued with prejudice by order [*7] dated February 15, 2007; and the claims against Fleetwood Credit Corp. were settled on or about November 30, 2006 and the claims were dismissed with prejudice as against that defendant on March 14, 2007.

2   The claims against the other named Suffolk County defendants were dismissed pursuant to the June 2006 order.

## I. BACKGROUND

A. Factual Background [3]

3   The facts are derived from defendants' statement of material facts pursuant to *Local Rule 56.1* and the accompanying declarations and other evidentiary material filed in support of defendants' motion for summary judgment, as well as plaintiff's response to defendants' statement and counterstatement of disputed material facts and the accompanying declarations and evidentiary material filed in response to the motion and in support of the cross motion.

1. Remaining Allegations against the Suffolk County defendants [4]

4   Pursuant to the June 2006 order, the following claims relating to the Suffolk County defendants were dismissed: (1) plaintiff's first cause of action as against the Suffolk County District Attorney, the SCPD Fifth Precinct, Jones, Gardner and Calabrese; (2) plaintiff's claims as against Suffolk County Clerk Edward Romaine; (3) plaintiff's [*8] claims relating to the filing of a mechanic's lien on the Grumman property; and (4) plaintiff's third cause of action as against the SCPD Fifth Precinct.

Plaintiff alleges that an investigation into a "deliberately set fire" and related insurance fraud (Compl., PP 22, 31) at Tag Motors was "suppressed" by defendants SCPD Fifth Precinct, Douglas Jones (Jones), Gardner and Calabrese, who were assigned by the Suffolk County District Attorney in February 2001 and September 2002 to investigate the fire. (Compl., P 22). In addition, plaintiff alleges that in February 2001, he complained of bank fraud committed by North Fork Bank to Gardner, Calabrese, and the Suffolk County District Attorney, who failed to investigate. (Compl., P 62).

Plaintiff alleges that on November 5, 2001, he was "the victim[] of an illegal repossession" of his Safari motor home by defendant Douglas Jones and officers of the SCPD Fifth Precinct. (Compl. P 94). Plaintiff further maintains that the police and the Suffolk County District Attorney did nothing to stop the repossession. (Compl., P 94).

Plaintiff further alleges that the County of Suffolk announced that it intended to sell portions of the Grumman property in [*9] September 2002 without compensating him in any way, notwithstanding that he had filed a mechanic's lien on the property. (Compl., P 65).

2. Remaining Allegations against the Town of Riverhead defendants [5] Plaintiff alleges that he devised the "single 'best' reuse plan" for the Grumman property, the creation of "another East Coast 'Hollywood' between Manhattan and the Hamptons." (hereinafter the Hollywood plan). (Compl. PP 17, 19, 22, 46). Plaintiff alleges that in September 1997, defendant James Stark (Stark) arranged a meeting between plaintiff and defendants Jack O'Connor (O'Connor) of Island Shore Realty (Island Realty) and Richard Seiler (Seiler) of Grubb & Ellis. (Compl., PP 47-48). According to plaintiff, he was told at the meeting that the Town of Riverhead wanted to do business only with him with respect to the Grumman property, that he would have to present them with a letter of credit in the amount of twenty million dollars to lease the property, and that upon presentation of the letter of credit, the Town of Riverhead would close on the property within thirty days. (Compl., P 48).

5   Pursuant to the June 2006 order, the following claims relating to the Town of Riverhead defendants [*10] were dismissed: (1) plaintiff's claims for conversion based upon the purported theft of his "Hollywood Plan"; and (2) plaintiff's claims for misappropriation.

Plaintiff alleges that he managed to secure the necessary letter of credit the following morning, but when he called O'Connor that same day he was told that the Town of Riverhead had changed its mind. (Compl. PP 51-52). Plaintiff alleges that shortly thereafter, he sent a letter to the Town of Riverhead accusing it, Island Realty and Grubb & Ellis of, *inter alia*, "bid rigging" and "theft of intellectual property." (Compl., P 53).

According to plaintiff, in February 1998, he met with defendants Vincent Vilella (Vilella), Bowman and Andrea Lohneiss (Lohneiss), and with Robert Kozakowitz, regarding his "Hollywood Plan." (Compl., P 54). Plaintiff alleges that at the meeting, Vilella, *inter alia*, suggested that First Industrial, which had been given the option to purchase the "industrial core" of the Grumman property, would likely lose their option to buy the property and that if plaintiff gave First Industrial his plans and blueprints relating to the "Hollywood Plan," First Industrial would lease the entire industrial core to him. **[*11]** (Compl., P 54g). According to plaintiff, he reluctantly agreed and a meeting was scheduled between him, defendant Richard Cohen (Cohen) and several other representatives of First Industrial, O'Connor and Bowman. (Compl., P 54g).

Plaintiff alleges that, as agreed, he brought his "plans, blueprints, financing strategies, and other documents" to the meeting. (Compl., PP55). According to plaintiff, First Industrial's representatives took his plans and told him they would let him know, (Compl., PP 55). Plaintiff alleges that one day later, he was contacted by defendant Twomey, Latham, Shane and Kelley (Twomey Latham) regarding a contract of sale and an August 1998 closing date. (Compl., PP 55). According to plaintiff, at the closing, he was tricked by representatives from the Town of Riverhead and Grubb & Ellis, and by O'Connor and Chris Kelley, of Twomey Latham, into signing a document releasing those entities from any civil claims by him. (Compl. T 56).

Plaintiff alleges that in November 2001, the Town of Riverhead, Stark, Vilella, Bowman, Lohneiss and Kozakowitz, gave or sold the "Hollywood Plan" to Burman. (Compl. PP 22, 48-53, 65). Plaintiff further alleges that Burman used Thomas's **[*12]** strategy, plans, and blueprints to purchase "Grumman's former 525-acre industrial core." (Compl. P 22). In addition, plaintiff alleges that the Town of Riverhead sold the industrial core of the Grumman property to Burman, notwithstanding that he had filed a mechanic's lien on the property. (Compl., P 65).

C. Remaining Allegations against the Tag Motor Defendants [6]

6  Pursuant to the June 2006 order, the following claims relating to the Tag Motor defendants were dismissed: (1) plaintiff's *section 1983* claims; and (2) plaintiff's first cause of action as against Tag Motors.

According to plaintiff, in December 1995, defendants George Gomes (Gomes) and Richard Rossi (Rossi) put together a "bogus" deal to sell him the "last remaining" Safari motor home from Tag Motors and to supply him with renter's insurance on his two motor homes. (Compl. P 90). Plaintiff alleges that Tag Motors, Gomes and Rossi failed to inform him (1) that the Safari had already been sold to defendants Nancy Langdon and John Langdon (collectively, the Langdons); and (2) that in September 1995, Games convinced Key Bank to lend the Langdons $ 100,000, using the Safari as collateral. (Compl. P 90).

Plaintiff alleges that in **[*13]** April 1996, "at a phony purchase and closing," he signed paperwork to borrow one hundred thousand dollars ($ 100,000) to purchase the Safari and paid one thousand dollars ($ 1,000) to Rossi for rental insurance on both the Safari and the other motor home he owned, but Gomes and Rossi did not give him a copy of the loan contract. (Compl., P 91). According to plaintiff, he received only a temporary registration and insurance card. (Compl., P 91). Plaintiff alleges that after two months, he still had not received an insurance policy, signed bank note, title or registration to the Safari, notwithstanding that he had paid "a small fortune" in renovations and repairs to the motor home. (Compl., P 91). Plaintiff further alleges that when the temporary registration expired, Gomes and Rossi extorted one thousand dollars ($ 1,000) per month from him, claiming that they otherwise would not issue another registration, until April 1997. (Compl., P 91).

Plaintiff alleges that in April 1997, he was contacted by Gomes, who proposed that if he agreed to finance another motor home at Tag Motors through Key Bank, he and Rossi would issue title and registration documents for both motor homes to plaintiffs. **[*14]** (Compl., P 92). According to plaintiff, "the truth became obvious" in 1997 that "Gomes had sold the Safari to his own corporate officers, who had a loan owed to Key Bank * * * [which], in turn, allowed Gomes and Rossi to sell and insure their repossessed motor homes on Tag [Motor's] lot * **, and just 4 days before releasing the Safari to the Plaintiff [sic], Gomes and Rossi had 11 motor homes burnt to the ground for insurance." (Compl., P 92).

II. DISCUSSION

A. Standard of Review

Summary judgment should not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007)* (internal quotations and **[*15]** citations omitted). "A fact is material when it might affect the outcome of the suit under governing law." *Id.* An issue of fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*. The moving party bears the initial burden of establishing the absence of any genuine issue of material fact, after which the burden shifts to the nonmoving parry to establish the existence of a factual question that must be resolved at trial. See *Koch v. Town of Brattleboro, Vermont, 287 F.3d 162, 165 (2d Cir. 2002)* (citing *Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986))*.

"In order to defeat a motion for summary judgment supported by proof of facts that would entitle the movant to judgment as a matter of law, the nonmoving party is required under *Rule 56(e)* to set forth specific facts showing that there is a genuine issue of material fact to be tried. * * *. If non movinggparty does not so respond, summary judgement will be entered against him." *Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993)* (citations **[*16]** omitted). The nonmoving party "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible * * *, or 'upon the mere allegations or denials of the [nonmoving] party's pleading,' *Fed.R.Civ.P. 56(e)*." *Id.* (citations omitted); see also *Geyer v. Choinski, No. 07-0190-pr, 2008 U.S. App. LEXIS 1309, 2008 WL 190504, at * 1 (2d Cir. Jan. 23, 2008)* (holding that reliance upon conclusory statements or mere allegations is not sufficient to defeat summary judgment).

B. The County of Suffolk's Motion

Following the dismissal Order of June 26, 2006, the only claims remaining against the County defendants relate to the County's purported involvement in the sale of the Grumman property; the SCPD Fifth Precinct's alleged involvement in the seizing of a Safari Motor Coach home from plaintiff and the failure of the Suffolk County District Attorney and police to stop the repossession; and investigations conducted by detectives Calabrese and Gardner on behalf of the Suffolk County District Attorney.

1. Claims Regarding the Sale of the Grumman Property

The County of Suffolk never had any ownership interest in the Grumman property or any interest in the "maintenance, brokering **[*17]** or sale of ' that property. (See Affidavit of Barbara Grattan [Grattan Aff.], dated November 16, 2006, p. 1) [7]. As plaintiff has failed to proffer any evidence to the contrary, his claim that the County stated an intent to sell portions of the Grumman property without compensation to him are dismissed. [8]

> 7   Although, as noted by plaintiff, the Grattan affidavit submitted by the County defendants on their motion is not notarized, the same affidavit is also submitted by the Riverhead defendants and is notarized. Thus, it constitutes admissible evidence.
>
> 8   In any event, it does not appear that a mere expression of intent to sell property, without more, is sufficient to constitute a deprivation of property sufficient to establish a due process claim.

2. Repossession Claims

Although "a claim for relief under *42 U.S.C. § 1983* only need allege that some person acting under color of state law deprived the claimant of a federal right," *Green v. Maraio, 722 F.2d 1013, 1016 (2d Cir. 1983)*; see also *Johnson v. Goord, 445 F.3d 532, 534 (2d Cir. 2006)*, it is well-settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under *§ 1983*." **[*18]** *Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006)*; see also *Back v. Hastings on Hudson Union Free School Dist., 365 F.3d 107, 122 (2d Cir. 2004)*(internal quotations and citation omitted). "Personal involvement" may be established by evidence of direct participation by the supervisor in the challenged conduct, or by evidence of a supervisory official's "(1) failure to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates." *Hayut v. State Univ. of New York, 352 F.3d 733, 753 (2d Cir. 2003)*.

Plaintiff does not identify any individual employee or official of the County, SCPD Fifth Precinct or Suffolk County District Attorney's Office in his claims relating to the repossession of his motor home. Thus, liability for the repossession of the plaintiff's motor home may only

be imposed on those defendants, if at all, pursuant to Monell.

A municipality or municipal entity cannot be held liable under § 1983 [*19] on a *respondeat superior* theory. See, *Monell v. Department of Social Services of City of New York, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)*; *Skehan v. Village of Mamaroneck, 465 F.3d 96, 108 (2d Cir. 2006)*. A municipal entity may only be held liable if the alleged offending conduct was undertaken pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipal] officers[,] * * * [or] governmental 'custom' even though such a custom has not received formal approval through the [municipality's] official decisionmaking [sic] channels." *Monell, 436 U.S. at 690, 98 S.Ct. 2018*. The plaintiff must show a "direct causal link between a municipal policy or custom, and the alleged constitutional deprivation." *City of Canton, Ohio v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)*.

To establish the existence of a municipal policy or custom, the plaintiff must allege (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; [*20] (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with the municipal employees. *Moray v. City of Yonkers, 924 F.Supp. 8, 12 (S.D.N.Y. 1996)*; see also *Davis v. Lynbrook Police Dept., 224 F.Supp.2d 463, 478 (E.D.N.Y. 2002)*.

Plaintiff has not established the existence of a formal policy officially endorsed by the County, the Suffolk County District Attorney or the SCPD Fifth Precinct, or that the County, District Attorney or SCPD Fifth Precinct, took any direct action with respect to the repossession of the motor home alleged in the complaint. Thus, municipal liability, if any, must be based on the specific actions of an official with final policymaking authority. See *Barrett v. Orange County Human Rights Commission, 194 F.3d 341, 350 (2d Cir. 1999)*. Plaintiff has not identified any official with final policymaking authority involved in the repossession of his motor home. Accordingly, plaintiff has not established [*21] a Monell claim against any of the County defendants.

3. Claims Relating to Investigations

To the extent plaintiff seeks to establish municipal liability against the County or the Suffolk County Dis-

trict Attorney based on his assertion that the District Attorney's Office has a custom, policy and/or practice with respect to the alleged inadequate investigations by Gardner and Calabrese, those claims are without merit. Plaintiff has not established the existence of a formal policy officially endorsed by the County or the Suffolk County District Attorney, or that the County or District Attorney took any direct action with respect to the investigations. Thus, municipal liability, if any, must be based on the specific actions of an official with final policymaking authority. See *Barrett, 194 F.3d at 350*. The only individuals identified by plaintiff with respect to the investigations are Gardner and Calabrese, who, as investigators, do not have final policymaking authority in the District Attorney's Office. See, e.g. *Feerick v. Sudolnik, 816 F.Supp. 879, 886-887 (S.D.N.Y. 1993)*, aff'd, *2 F.3d 403 (2d Cir. 1993)* (dismissing the plaintiff's claims against the assistant district attorneys on the [*22] basis that they were not municipal policymakers); *Womack v. County of Amador, No. S-02-1063, 2008 U.S. Dist. LEXIS 17844, 2008 WL 669811, at * 8 (E.D.Cal. Mar. 7, 2008)* (finding that a district attorney investigator did not have final policymaking authority); see generally *Monell, 436 U.S. at 691, 98 S.Ct. 2018* (holding that municipal liability may not be based solely on the misconduct of non-supervisory employees); *Anthony v. City of New York, 339 F.3d 129, 139 (2d Cir. 2003)* (holding that "[A]n official has final [policymaking] authority if his decisions, at the time they are made, for practical or legal reasons constitute the municipality's final decisions"). Accordingly, plaintiff has not established a Monell claim against any of the County defendants with respect to his claims relating to the investigations.

Moreover, there is no constitutional right to an investigation by government officials. *Nieves v. Gonzalez, No. 05-CV-00017S, 2006 U.S. Dist. LEXIS 24302, 2006 WL 758615, at * 4 (W.D.N.Y. Mar. 2, 2006)*; *Bal v. City of New York, No. 94 Civ. 4450, 1995 U.S. Dist. LEXIS 1359, 1995 WL 46700, at * 2 (S.D.N.Y. Feb. 7, 1995)*, aff'd, *99 F.3d 402 (2d Cir. 1995)*; see also *Star v. Burlington Police Department, 189 F.3d 462 (table)* [published in full-text format at *1999 U.S. App. LEXIS 21368*], *1999 WL 710235 (2d Cir. Sept. 2, 1999)* [*23] (holding that the plaintiff's allegations that the police department failed to respond to her complaint did not state a valid due process claim under *Section 1983)*; *Cotz v. Mastroeni, 476 F.Supp.2d 332, 362 (S.D.N.Y. 2007)* (holding that there is no affirmative obligation upon the police to take action against an alleged perpetrator in response to a civilian report); see generally *Town of Castle Rock, Colo. v. Gonzales, 545 U.S. 748, 768, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005)* (holding that the benefit that a third party may receive from having someone else arrested for a crime generally does not trigger Due Process protection); *DeShaney v. Winnebago County De-*

*partment of Social Services*, 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) (holding that the *Due Process Clause* generally does not confer an affirmative right to governmental aid). Thus, the Suffolk County District Attorney's Office, Gardner and Calabrese had no duty to investigate or prosecute plaintiff's claims of fraud on the part of, *inter alia*, Tag Motors and North Fork Bank.

To the extent plaintiff alleges that Gardner and Calabrese mishandled their investigations of his complaints or committed fraud, the record [*24] is devoid of any admissible evidence substantiating this allegation. Indeed, the only evidence in the record indicates that the Suffolk County District Attorney's office declined to investigate plaintiff's complaints, in part, because plaintiff did not provide documentation or evidence of his complaints for almost six (6) months after he was requested to do so. (Affidavit of Peter M. Calabrese [Calabrese AM], P 3; Affidavit of Robert W. Gardner [Gardner Aff.], P 3 and attached Inter-Office Communication). In opposition, plaintiff was obligated to introduce evidence on this point in response to defendants' motion for summary judgment. "A plaintiff opposing a motion for summary judgment must lay bare his proof in evidentiary form and raise an issue of fact sufficient to send to the jury." *Weiss v. La Suisse, Societe D'Assurances Sur La Vie*, 293 F.Supp.2d 397, 408 (S.D.N.Y. 2003) (citing *McGovern v. Local 456, Intern. Broth. of Teamsters, Chauffeurs & Warehousemen & Helpers of America*, AFL-CIO, 107 F.Supp.2d 311, 320 (S.D.N.Y.2003)). A party cannot withhold evidence in his possession when his opponent makes a motion for summary judgment claiming that he will introduce the missing evidence [*25] at trial. See *Weiss*, 293 F.Supp.2d at 408. *In re Food Fair, Inc.*, 14 B.R. 46, 48 (Bankr.S.D.N.Y.1981) ("in opposing a motion for summary judgment a party, cannot withhold evidence until the date of trial, but must show by some admissible evidence that there is a genuine issue as to a material fact"). Thus, plaintiff's allegation that "literally hundreds of documents [are] in [his] possession that disprove" the County defendants' motion, ("Plaintiff's Answer in Opposition and Counter-Motion for Summary Judgment" [Plf. Opp.], p. 12), is insufficient to defeat summary judgment. Plaintiff was clearly aware of his obligation to submit admissible evidence insofar as he submits certain documentation as exhibits and was provided with the notice to *pro se* litigants advising him of his obligation to submit evidence and providing him with a copy of *Rule 56 of the Federal Rules of Civil Procedure* by all defendants as required by *Local Civil Rule 56.2*.

Moreover, in order to establish a claim for fraud under New York law, the plaintiff must show (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) made with the intention

of inducing reliance; (4) upon [*26] which the plaintiff reasonably relied; and (5) causing injury to the plaintiff. *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001) (citing *Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996)). Assuming that Gardner's and Calabrese's alleged statements to plaintiff that they would investigate his complaints constitute a material misrepresentation, plaintiff cannot establish that defendant's knew such statements to be false when made or, more significantly, that plaintiff relied on such representations to his detriment. Accordingly, the branch of the County defendants' motion which seeks summary judgment dismissing plaintiff's claims against them is granted and the complaint is dismissed in its entirety as against those defendants.

**C. Motion of Riverhead Defendants**

The Riverhead Community Development Agency (RCDA), an agency of the Town of Riverhead, took title of the Grumman property in 1998. (Affidavit of Andrea Lohneiss [Lohneiss Aff.], PP 1 and 3). Defendant Andrea Lohneiss is the director of the RCDA. (Lohneiss Aff., P 1). The Riverhead defendants retained defendants Island Shore Realty, Grubb & Ellis and O'Connor to market the Grumman [*27] property to prospective purchasers. (Lohneiss Aff., P 7).

Plaintiff testified that prior to August 1998, he met with Stark and Vilella, each in their official capacity as Supervisor of the Town of Riverhead [9], and with Vilella in his unofficial capacity as well, to submit plans for the re-use of the Grumman property. (Excerpts of transcript of deposition of Thomas M. Longi [Longi Dep.], pp. 299-301; See also Lohneiss Aff, P 5) [10]. Plaintiff never met personally with Lohneiss regarding his proposal or bid for the Grumman property. (Lohneiss Aff., P 5).

---

9    Stark left office as Town Supervisor on December 31, 1997 and Vilella remained in office as Town Supervisor from January 1, 1998 until December 31, 1999. (Lohneiss Aff., P 10; Grattan Aff., pp. 1-2). Thereafter, neither acted as an official or employee of the Town of Riverhead. (Lohneiss Aff., P 10, Grattan Aff., p. 2).

10   Plaintiff's challenge to the use of excerpts of the transcript of his deposition testimony is without merit. The affirmation of William Alan Kowalenko, Esq., attorney for the Tag Motor defendants in this action, states that the attached exhibits "B" through "E" and "G" are relevant excerpts of the deposition transcript [*28] of the plaintiff from his deposition in October 5, 2006, (Kowalenko Aff., P 3), and, thus, they are properly admissible. See, e.g. *Commercial Data Servers, Inc. v. International Business Machines*

Case 1:07-cv-10274-JSR    Document 15-2    Filed 06/25/2008    Page 13 of 25

Page 8
2008 U.S. Dist. LEXIS 25468, *

*Corp., 262 F.Supp.2d 50, 59 (S.D.N.Y. 2003).* Moreover, *Rule 56(c) of the Federal Rules of Civil Procedure* expressly recognize depositions as properly considered on motions for summary judgment. Although plaintiff challenges the authenticity of the transcript, he does not dispute having received a copy, and proffers evidence indicating that it was sent to him on November 9, 2006, and he does not indicate what specific changes he would have made to the relevant portions thereof.

Thereafter, plaintiff's mother, Rose Longi, introduced plaintiff to defendant Bowman, who, notwithstanding plaintiff's allegation to the contrary, was never an official or employee of the Town of Riverhead. (See Lohneiss Aff., P 9; Grattan Aff, p. 3). Plaintiff then retained defendant Christopher Kelley, an attorney at the offices of defendant Twomey, Latham.

By letter dated February 13, 1998, plaintiff was advised by the attorneys representing the RCDA that he would not be presented with a lease and that it would not [*29] proceed with further consideration of plaintiff's proposal regarding the Grumman property. (Affidavit of Thomas C. Sledjeski [Sledjeski Aff.], Ex. H).

Kelley submitted a draft bid letter for the purchase of the Grumman property, dated August 12, 1998, which had been reviewed by plaintiff, to Vilella. (Sledjeski Aff., Ex. E). On August 17, 1998, a meeting was held at the offices of Twomey Latham, which, according to plaintiff, was attended by O'Connor, Kelley, Bowman and plaintiff. (Id.). At that meeting, plaintiff signed a release of any and all claims against, *inter alia,* the Riverhead defendants in connection with, or in any way related to, the Grumman property. (Sledjeski Aff., Ex. F).

*1. Section 1983 Claims*

The Riverhead defendants contend that plaintiff's conspiracy and fraud claims against them, asserted pursuant to *Section 1983,* are time-barred, since he did not file his amended complaint, which first named them, until May 2003. [11]

> 11    The branch of the Riverhead defendants' prior motion to dismiss which sought dismissal of plaintiff's *Section 1983* claims as time-barred was denied on the basis, *inter alia,* that it could not be ascertained from the face of the amended complaint when [*30] those claims accrued. However, since the Riverhead defendants have now submitted evidence of when those claims accrued, it is appropriate to revisit their statute of limitations defense.

Claims pursuant to *42 U.S.C. § 1983* are governed by New York's three year statute of limitations. See *Owens v. Okure, 488 U.S. 235, 249-250, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989); Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002).* However, although state law governs the applicable limitations period, federal law governs when a claim accrues. See *Covington v. City of New York, 171 F.3d 117, 121 (2d Cir. 1999).* Generally, under federal law, a claim accrues when "the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.*

All of plaintiff's allegations against the Riverhead defendants relate to conduct that occurred in or prior to August 1998 and, in no event, later than December 31, 1999, when Vilella last acted in any capacity as an official or employee of the Town of Riverhead. It is clear that plaintiff was aware of those claims at that time, as evidenced, inter alia, by his letter accusing the Riverhead defendants of bid-rigging and theft and by his signing [*31] of the release in August 1998. Plaintiff filed his amended complaint naming the Riverhead defendants on May 19, 2003. As all of plaintiff's claims against the Riverhead defendants accrued more than three (3) years prior to the filing of his amended complaint, his claims against those defendants must be dismissed as time-barred.

*2. State Law Claims*

The Riverhead defendants contend that plaintiff's pendent state law claim for fraud must be dismissed for failure to timely serve a notice of claim.

State notice of claim statutes apply to pendent state law claims in federal court. See, *Hardy v. New York City Health & Hospitals Corp., 164 F.3d 789, 793 (2d Cir. 1999); Kyne v. Carl Beiber Bus Services, 147 F.Supp.2d 215, 217 (S.D.N.Y. 2001).* Under New York law, a notice of claim is a condition precedent to maintaining tort actions against municipalities or any of their officers, agents or employees. See, New York State General Municipal Law § 50-e; *Hardy, 164 F.3d at 793.* The notice of claim must set forth, among other things, the nature of the claim, and must be filed within ninety days of when the claim arises. See, General Municipal Law §§ 50-e(1)(a) and (2); *Hardy, 164 F.3d at 793.* Notice [*32] of claim requirements are strictly construed, and a failure to comply with the requirements generally requires dismissal of the state law claims. See, *Hardy, 164 F.3d at 793-794.*

It is undisputed that plaintiff never filed a notice of claim against the Riverhead defendants. Accordingly, plaintiff's pendent state law tort claims are dismissed. See, *D'Antonio v. Metropolitan Transportation Authority, No. 06 CV 4283, 2008 U.S. Dist. LEXIS 16726, 2008 WL 582354, at * 6 (S.D.N.Y. Mar. 4, 2008)* (dismissing

plaintiff's fraud claims with prejudice for failure to file a notice of claim); see also *Mercedes v. Blue, No. 00 Civ. 9225, 2004 U.S. Dist. LEXIS 19617, 2004 WL 2202578, at * 11 (S.D.N.Y. Sept. 30, 2004)*(dismissing plaintiff's state law false arrest claim for failure to file a notice of claim). Moreover, as this court lacks jurisdiction to grant plaintiff leave to file a late notice of claim, see, e.g. *D'Antonio, 2008 U.S. Dist. LEXIS 16726, 2008 WL 582354, at * 6* (citing cases), plaintiff's state law claims are dismissed with prejudice. [12] As no other claims remain as against the Riverhead defendants, the amended complaint is dismissed in its entirety as against those defendants.

> 12   In light of the dismissal of all plaintiff's federal claims against the Riverhead **[*33]** defendants as time-barred, it is unnecessary to consider the Riverhead defendants' remaining contentions.

## D. Tag Motor Defendants' Motion

Plaintiff first went to Tag Motors in early 1992 or 1993 to look at Safari Motor Coach homes, but couldn't afford one at that time. (PIE Dep., pp. 586, 596-597). According to plaintiff, he was contacted by defendants Gomes and Rossi at the end of 1995. (Plf. Dep., pp. 586, 595). Plaintiff testified that he started negotiating with Gomes and Rossi for the purchase of a 1993 Safari Motor Coach in January 1996. (Plf. Dep., p. 595, 598). According to plaintiff, he took possession of the 1993 Safari Motor Coach in April 1996 and was told by Gomes that he would receive the title and insurance thereto once his credit had "passed." (Plf. Dep., pp. 607-608). Defendants maintain that plaintiff took possession of the vehicle on consignment. Plaintiff testified that within sixty (60) days of receiving the Safari Motor Coach, he remitted payment to Tag Motors in the amount of one thousand dollars ($ 1,000). (Plf. Dep., p. 609). Plaintiff testified that he paid Tag Motors one thousand dollars ($ 1,000) monthly until 1997, although the canceled checks he produced **[*34]** evidenced payments to Tag Motors from June to September of 1996. (Plf. Dep., p. 610; Affirmation of William Alan Kowalenko [Kowalenko Aff], Ex. H).

In November 1996, plaintiff was given the Key Bank of New York (Key Bank) loan book issued to defendant John and Nancy Langdon, the owners of the 1993 Safari Motor Coach, so that he could make payments directly to Key Bank. Thereafter, plaintiff made monthly payments directly to Key Bank in the amount of one thousand sixty-four dollars and ninety-seven cents ($ 1,064.97) from November 25, 1996 to March 1997 [13] as payment for the 1993 Safari Motor Coach. (Kowalenko Aff. Ex. I).

> 13   With the exception of a payment in December 1996 in the amount of one thousand fourteen dollars and twenty-six cents ($ 1,014.26). (Kowalenko Aff., Ex. J).

On August 19, 1998, plaintiff filed or attempted to file a notice of lien against the 1993 Safari Motor Coach with the clerk of the County of Suffolk. (Kowalenko Aff., Ex. L). Within that "Notice of Lien," plaintiff identified the names of the owners and debtors of the vehicles as John C. and Nancy Langdon, Tag Motors, Key Bank and Safari Motor Coaches Inc. (Id.). Plaintiff claimed a lien "for the principal and **[*35]** interest of a debt for the price and value of the labor and material furnished in the State of New York towards the repairing, furnishing, shipping and storing of the" 1993 Safari Motor Coach. (Id.).

As noted above, in order to establish claim for fraud under New York law, the plaintiff must show (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) causing injury to the plaintiff. *Wynn, 273 F.3d at 156 (2d Cir. 2001)*.

Plaintiff has failed to establish a material misrepresentation on the part of any of the Tag Motor defendants. Although plaintiff conclusorily alleges that the Tag Motor defendants [14] established a "bogus" deal to sell him the 1993 Safari Motor Coach when it had already been sold to the Langdons, (Compl., PP 90, 92), the only evidence in the record indicates that plaintiff was aware of the true owners of the Safari Motor Coach insofar as he attempted to file a lien on the vehicle and he took over the loan book and made payments directly to Key Bank on the Langdons loan account. Moreover, as noted above, plaintiff's allegation **[*36]** that "literally hundreds of documents [are] in [his] possession" that disprove" the Tag Motor defendants' motion, (Plf. Opp., p. 12), is insufficient to defeat summary judgment. See, e.g. *Weiss, 293 F.Supp.2d. at 408*.

> 14   Notably, plaintiff does not allege the involvement of defendant Jones in any of the purported fraud.

Moreover, plaintiff's fraud claims are time-barred pursuant to *N.Y. C.P.L.R. § 213(8)*, which requires that an action based upon fraud be commenced within six (6) years from the alleged fraud or two (2) years from the time the plaintiff discovered the fraud or "possessed knowledge of facts from which the fraud could reasonably have been inferred," whichever is greater. See *Northridge Ltd. Partnership v. Spence, 246 A.D.2d 582, 583, 668 N.Y.S.2d 220 (2d Dept. 1998)*. As plaintiff knew of the alleged fraud, or had knowledge of facts from which

fraud could reasonably be inferred as of November 25, 1996, when he commenced remitting payments for the Safari Motor Coach directly to Key Bank on the Langdons' loan, the greater limitations period is the date of the alleged fraud. Here, plaintiff's cause of action accrued no later than June 1996, when he remitted payment to Tag Motors **[*37]** in purported reliance upon the Tag Motor defendants' allegedly false representations that he owned the vehicle. See, e.g. *Ingrami v. Rovner, 45 A.D.3d 806, 808, 847 N.Y.S.2d 132 (2d Dept. 2007)* (finding that the cause of action for fraud accrued when the plaintiff transferred the money in reliance upon the defendants' allegedly false representations). Since plaintiff's fraud claims against the Tag Motor defendants were commenced on November 1, 2002, almost five months after the limitations period had expired, those claims are dismissed as time-barred. As the only claims remaining against the Tag Motor defendants were the fraud claims, the amended complaint is dismissed in its entirety as against those defendants.

E. Plaintiff's Cross Motion

In light of the dismissal of plaintiff's remaining claims against all remaining defendants, plaintiffs cross motion for summary judgment is denied as moot.

III. CONCLUSION

The motions of the County defendant, Riverhead defendants and Tag Motor defendants for summary judgment are granted and the amended complaint is dismissed in its entirety as 21 against those defendants, and plaintiff's cross motion for summary judgment is denied. As there are no other **[*38]** defendants or claims remaining in this action, the clerk of the Court is directed to enter judgment accordingly and to close this case.

SO ORDERED.

/s/ Sandra J. Feuerstein

SANDRA J. FEUERSTEIN United States District Judge

Dated: March 27, 2008

LEXSEE 2008 U.S. DIST. LEXIS 17844

**ROBERT WOMACK, Plaintiff, v. COUNTY OF AMADOR, ESTATE OF RUS-
SELL MOORE, deceased in his individual capacity, DAVID J. IREY, in his individ-
ual capacity, TODD D. RIEBE, in his individual capacity, RON HALL, in his indi-
vidual and official capacities, RICH DUNLOP, in his individual capacity, JIM
WALSHAW, in his individual and official capacities, ROBERT WERTMAN, in his
individual capacity, JAMES GARCIA, in his individual capacity, and DOES 1
through 10, Defendants.**

**No. Civ. S-02-1063 RRB DAD**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
CALIFORNIA**

*2008 U.S. Dist. LEXIS 17844*

**March 6, 2008, Decided
March 7, 2008, Filed**

**COUNSEL:** [*1] For Robert - Womack, Plaintiff: Mi-
chael Raley Mitchell, LEAD ATTORNEY, Law Office
of Michael R. Mitchell, Tarzana, CA; Steven E. Moyer,
LEAD ATTORNEY, Moldo Davidson Fraioli Seror &
Sestanovich, LLP, Los Angeles, CA.

For Amador County, Defendant: Laurence L. Angelo,
LEAD ATTORNEY, Allison Ernestine Goldsmith, J.
Scott Smith, Angelo, Kilday and Kilduff, Sacramento,
CA.

For Russell Moore, in his individual capacity, Rich
Dunlop, in his individual capacity, Robert Wertman, in
his individual capacity, James - Garcia, in his individual
capacity, Defendants: Stephen Charles Pass, LEAD AT-
TORNEY, State of California, Office of the Attorney
General, Sacramento, CA.

For David J Irey, in his individual capacity, Defendant:
William Stephen Scott, LEAD ATTORNEY, Scott and
Nicholls, Professional Law Corporation, Stockton, CA.

For Todd D Riebe, in his individual capacity, Ron Hall,
in his individual capacity and official capacity, Jim Wal-
shaw, in his individual capacity and official capacities,
Defendants: Robert H Johnson, LEAD ATTORNEY,
Johnson Schachter & Lewis, A PLC, Sacramento, CA.

**JUDGES:** RALPH R. BEISTLINE, United States Dis-
trict Judge.

**OPINION BY:** RALPH R. BEISTLINE

**OPINION**

**Memorandum of Opinion and Order**

Robert Womack ("Womack") [*2] brought a civil
rights action against the County of Amador ("County"),
California Highway Patrol Officer Russell Moore
("Moore"), San Joaquin County Deputy District Attorney
David J. Irey ("Irey"), Amador County District Attorney
Todd Riebe ("Riebe"), Amador County District Attorney
Investigator Ron Hall ("Hall") and others, [1] alleging
*Fourth Amendment* claims arising out of two searches
allegedly executed under warrants obtained with know-
ingly false affidavits during a criminal investigation into
the removal and disposal of an underground gasoline
storage tank. [2] The County now moves for summary
judgment or, in the alternative, summary adjudication. [3]
For the reasons stated below, the court GRANTS the
motion.

1    The other named defendants are: Rich Dunlop
and Robert Wertman, California Highway Patrol
Officers, Jim Walshaw, an Amador County Dis-
trict Attorney Investigator, and James Garcia, an
investigator for the California Department of In-
surance. Compl. PP 10-13.
2    Womack also alleges a *Fourteenth Amend-
ment* malicious prosecution claim.
3    Inasmuch as the Court concludes the parties
have submitted memoranda thoroughly discuss-
ing the law and evidence in support of their posi-

tions, it further **[\*3]** concludes oral argument is neither necessary nor warranted with regard to the instant matter. See *Mahon v. Credit Bureau of Placer County, Inc., 171 F.3d 1197, 1200 (9th Cir. 1999)*(explaining that if the parties provided the district court with complete memoranda of the law and evidence in support of their positions, ordinarily oral argument would not be required).

## I. BACKGROUND

In April 1998, KRL Partnership ("KRL") [4] purchased a defunct gasoline station in Jackson, California, in order to convert the real property into a parking lot. Pl.'s AMF P 4; Def.'s Undisputed Material Facts ("UMF") PP 1-2. On May 2, 1998, Plaintiff Womack oversaw the removal of an underground gasoline storage tank. Pl.'s AMF P 7; Def.'s UMF P 3. Upon learning of the removal of the storage tank, Amador County officials expressed concern about environmental contamination and referred the matter to the Amador County District Attorney's office (the "D.A.'s office"), which instituted a criminal investigation. Def.'s UMF PP 2, 5, 14-16, 18.

> 4    KRL is a California general partnership by and between certain children of Womack created for the ownership of land investments. Pl.'s Additional Material Facts ("AMF") P 1.

In **[\*4]** June 1998, District Attorney Stephen Cilenti ("Cilenti") assigned the case to Hall, an investigator employed by the D.A.'s office. Pl.'s AMF P 14; Def.'s UMF P 18. Hall was assigned the task of determining whether Womack had committed environmental crimes in connection with the removal and disposal of the underground gasoline storage tank. Pl.'s AMF P 14. Due to Hall's inexperience with environmental cases, Irey, a San Joaquin County Deputy District Attorney, was specially appointed to conduct the investigation in Amador County, assisted by Moore, a California Highway Patrol Officer. Id. PP 17, 21, 33; Def.'s UMF PP 19, 24. Hall and Irey located the removed storage tank and obtained a copy of a check, drawn from a KRL bank account, used to pay for the disposal of the storage tank. Def.'s UMF PP 20-22. The address on the check was 15864 Ridge Road, Sutter Creek, California, a KRL property and Womack's home address (the "Ridge Road Property"). Id. PP 23, 26.

In October 1998, Moore drafted an affidavit, with the assistance of Irey and Hall, in support of a search warrant (the "first search warrant") authorizing the seizure of KRL records from Womack's residence on the Ridge Road property. **[\*5]** Pl.'s AMF PP 44-45; Def.'s UMF P 26. On October 30, 1998, Moore and investigators from the D.A.'s office, including Hall, executed a search of the Ridge Road Property. Pl.'s AMF P 50;

Def.'s UMF P 29. During the search, investigators, including Hall and Moore, seized a broad range of documents. Pl.'s AMF P 51. On December 1, 1998, a grand jury indicted Womack and others on twenty-one counts, most of which concerned the removal of the underground storage tank and actions related to its disposal. Id. P 60; Def.'s UMF P 30.

On January 4, 1999, Todd Riebe ("Riebe") was sworn in as Amador County District Attorney. Def.'s UMF P 31. On January 11, 1999, Moore, assisted by Irey, submitted an affidavit in support of a search warrant (the "second search warrant") to search the Ridge Road Property. Id. P 32; Pl.'s AMF P 65. The affidavit submitted in support of the second search warrant indicated that it had two goals: (1) it sought evidence to prosecute the pending indictment against Womack; and (2) it sought to investigate and uncover new crimes. Exh. 50, attached to Pl.'s Opp. to Def.'s Mtn., for Summary Judgment/Adjudication ("MSJ/MSA"). Specifically, the affidavit characterized the aims of **[\*6]** the search as follows: "to gather evidence as to the crimes[] which Robert WOMACK was indicted on and to help determine the entire scope of these business activities that are permeated with fraud we need to determine several additional things." Id. [5] Before Moore submitted the affidavit, it was reviewed by Irey and approved by Riebe. Pl.'s AMF PP 69-73.

> 5    The affidavit further stated that "we have now additionally embarked on the early stages of tracking unreported income and the monies of the WOMACK'S [sic] via their various questionable transfers of personal and real property and the tax implications of those activities." Exh. 50, attached to Pl.'s Opp. to Def.'s MSJ/MSA.

On January 11, 1999, the second search warrant was approved authorizing the seizure of a broad range of documents created since January 1, 1995 (Pl.'s AMF PP 79, 85), and was executed by Hall, Moore, and others. Def.'s UMF P 34. After discovering evidence outside the scope of the warrant, Moore interrupted the search and returned to court with Irey to obtain an extended warrant authorizing seizure of documents dating back to 1990. Id. P 35; Pl.'s AMF PP 86-87. Following approval of the extended warrant, Moore allegedly **[\*7]** seized documents relating to all aspects of the KRL partnership going back to 1977 and earlier. Pl.'s AMF PP 89-90.

On August 18, 1999, the Amador County Superior Court found the warrant authorizing the October 30, 1998 search to be facially overbroad and beyond the scope of the probable cause underlying the search. Pl.'s AMF P 54; Exh. 25, attached to Pl.'s Opp. to Def.'s MSJ/MSA. The court ordered that all KRL business records seized during the search to be suppressed on the

2008 U.S. Dist. LEXIS 17844, *

basis that the affidavit in support of the warrant did not establish probable cause for the seizure of such records. Id. On July 3, 2001, the Third District Court of Appeal affirmed the trial court's order in part and reversed it in part. Exh. 26, attached to Pl.'s Opp. to Def.'s MSJ/MSA. Specifically, the Third District concluded that the trial court erred by suppressing all KRL business records because the affidavit in support of the warrant established probable cause for the seizure of some of KRL's business records (e.g., the records relating to the alleged removal and disposal of the underground storage tank). Id. The Third District vacated the trial court's order with directions to enter a new order suppressing [*8] only KRL business records unrelated to the alleged removal and disposal of the underground storage tank. Id.

In September 2000, the D.A.'s office transferred Womack's criminal prosecution to the California Attorney General's Office. Def.'s UMF P 41. In August 2001, the Attorney General's Office dismissed the criminal charges against Womack and instituted a civil action against Womack and others. Id. PP 42-43. No criminal charges were ever subsequently filed against Womack, KRL or any of its partners. Pl.'s AMF P 10.

On May 15, 2002, Womack filed a civil rights action under 42 U.S.C. § 1983 alleging the following claims: (1) *Fourth Amendment* violations (unreasonable search and seizure); (2) *Fourteenth Amendment* violation (malicious prosecution); and (3) Monell liability. Compl. PP 1-84. On August 10, 2007, the County filed a motion for summary judgment or, in the alternative, summary adjudication. Docket at 72. The County seeks summary judgment/adjudication on the following grounds: (1) the *Fourth Amendment* claims are time-barred; (2) the Monell claim fails because the county officials connected with this action are immune from liability under the *Eleventh Amendment*, and/or because Womack [*9] failed to proffer evidence demonstrating that the implementation of a county policy, custom or practice caused the alleged constitutional deprivations; and (3) the malicious prosecution claim fails because Womack failed to proffer evidence establishing a genuine issue of material fact as to whether the prior criminal prosecution was pursued to a favorable termination. These arguments are discussed individually below.

## II. DISCUSSION

### A. Legal Standard

*Rule 56(b)* permits a party whom a claim has been asserted to "move at any time, with or without supporting affidavits, for summary judgment/adjudication on all or part of the claim." *Fed. R. Civ.P. 56(b)*. Summary judgment/adjudication is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. An issue of fact is "genuine" if it constitutes evidence with which "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*. That genuine issue of fact [*10] is "material" if it "might effect the outcome of the suit under the governing law." See id. ("As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. See *Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)*. Where the nonmoving party will have the burden of proof on an issue at trial, the movant's burden may be discharged by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. See *id. at 325; Miller v. Glenn Miller Productions, Inc., 454 F.3d 975, 987 (9th Cir. 2006)*. The moving party need not disprove the other party's case. *Miller, 454 F.3d at 987*. "Thus, [s]ummary judgment for a defendant is appropriate when the plaintiff fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial." Id. (internal quotation marks omitted). If the moving party sustains its [*11] burden, the burden then shifts to the nonmoving party to go beyond the pleadings and by his or her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. See *Celotex, 477 U.S. at 324* (internal quotation marks omitted) (citing *Fed.R.Civ.P. 56(e)*); *Miller, 454 F.3d at 987*. This burden requires more than a simple showing that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)*. The mere existence of a scintilla of evidence is likewise insufficient to create a genuine factual dispute. *Anderson, 477 U.S. at 252*. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc., 210 F.3d 1099, 1103 (9th Cir. 2000)*. "But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." Id.

On a motion for summary judgment, all reasonable doubt as to the existence of a genuine issue of [*12] fact should be resolved against the moving party. *Hector v.*

*Wiens. 533 F.2d 429, 432 (9th Cir. 1976).* The inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Valandingham v. Bojorquez, 866 F.2d 1135, 1137 (9th Cir. 1989).* Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Insurance Co. of North America, 638 F.2d 136, 140 (9th Cir. 1981).* The purpose of summary judgment/adjudication is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita. 475 U.S. at 587.* "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.*

## B. Statute of Limitations

The County argues that Womack's *Fourth Amendment* claims are time-barred because more than one-year passed from the date the claims accrued, October 1998 and January 1999, respectively, and the date the instant action was commenced, May 15, 2002.

In *§ 1983* actions, federal courts apply the forum state's statute of limitations for personal injury actions, along with the forum state's law **[*13]** regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law. *Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004).* Prior to January 1, 2003, California's one-year statute of limitations for personal injury actions applied to *§ 1983* suits in federal court. *Maldonado v. Harris, 370 F.3d 945, 954 (9th Cir. 2004).* Effective January 1, 2003, the new California statute of limitations for assault, battery, and other personal injury actions is two years. *Cal. Civ. Proc. Code § 335.1.* Because the extension is not retroactive, it does not resuscitate claims that would have already been barred by the prior statute of limitations. *Maldonado, 370 F.3d at 954-55.* Here, because the instant action was commenced on May 15, 2002, any claims accruing before May 15, 2001 are time-barred.

Federal law determines when a civil rights claim accrues. *Maldonado, 370 F.3d at 955.* "Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action.'" *Id.* Under federal law, *§ 1983* claims relating to pending charges do not accrue until the charges are dismissed if a judgment in favor of the plaintiff **[*14]** would necessarily imply the invalidity of any sentence that might result from prosecution of pending charges. See *Harvey v. Waldron, 210 F.3d 1008, 1014-16 (9th Cir. 2000)* ("hold[ing] that a *§ 1983* action alleging illegal search and seizure of evidence upon which criminal charges are based does not accrue until the criminal charges have been dismissed or the conviction has been overturned."); accord *Whitaker v. Garcetti, 486 F.3d 572, 583 (9th Cir.*

*2007).* In this case, because Womack's *§ 1983* action challenges the searches and seizure of evidence upon which the criminal charges were based, his *Fourth Amendment* claims did not accrue until the criminal charges were dismissed on August 6, 2001. As such, Womack's *Fourth Amendment* claims are timely because the instant action was commenced on May 15, 2002, less than one-year after the criminal charges were dismissed. [6]

> 6  Alternatively, Womack's *Fourth Amendment* claims are timely because, under California law, these claims were tolled during the period in which criminal charges were pending as this action is based, in part, on the conduct of a county peace officer. See *Cal. Gov't Code § 945.3* ("No person charged by indictment . . . or other **[*15]** accusatory pleading charging a criminal offense may bring a civil action for money or damages against a peace officer or the public entity employing a peace officer based upon conduct of the peace officer relating to the offense for which the accused is charged, including an act or omission in investigating or reporting the offense or arresting or detaining the accused, while the charges against the accused are pending before a superior court."). The definition of "peace officer" includes an investigator employed by the D.A.'s Office (e.g., Hall). See *Cal. Penal Code § 830.1* (defining peace officer as "[a]ny sheriff, undersheriff, or deputy sheriff, employed in that capacity, of a county, . . . or any inspector or investigator employed in that capacity in the office of a district attorney, is a peace officer.").

## C. State Agent Immunity Under *§ 1983*

The County argues that summary adjudication is appropriate with respect to Womack's *Fourth Amendment* claims because the County officials connected with this action are immune from liability by virtue of the *Eleventh Amendment* and the doctrine of sovereign immunity.

*Section 1983* provides for a damages action against "[e]very person" who, while **[*16]** acting under color of law, subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." The *federal Constitution's Eleventh Amendment* grants sovereign immunity from such suits not only to each of the fifty states but also to state officers. See *Will v. Michigan Dept. of State Police. 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989).* This is because a suit against a state officer "is no different from a suit against the State itself." *Id.;* see *Doe v. Lawrence Livermore Nat'l Lab., 131 F.3d 836, 839 (9th Cir. 1997)* (a federal action for monetary damages against an individual State

official acting in his official capacity is barred by the *Eleventh Amendment* in the same way that an action against the State is barred). The United States Supreme Court has held that cities, counties, and local officers sued in their official capacity are themselves "persons" for purposes of *§ 1983* and, although they cannot be held vicariously liable under *§ 1983* for their subordinate officers' unlawful acts, they can be held directly liable for constitutional violations carried out under their own regulations, policies, customs, or usages by persons having "final policymaking [*17] authority" over the actions at issue. *McMillian v. Monroe County, 520 U.S. 781, 784-85, 117 S. Ct. 1734, 138 L. Ed. 2d 1 (1997).* [7] However, states and state officers sued in their official capacity are not considered persons under *§ 1983* and are immune from liability under the statute by virtue of the *Eleventh Amendment* and the doctrine of sovereign immunity. *Howlett v. Rose, 496 U.S. 356, 365, 110 S. Ct. 2430, 110 L. Ed. 2d 332 (1990).* Whether this immunity applies to a particular governmental official is a question of federal law, but the "inquiry is dependent on an analysis of state law." *McMillian, 520 U.S. at 786.*

---

7  A plaintiff may establish municipal liability by showing: (1) a longstanding practice or custom which constitutes the standard operating procedure of the local government entity; or (2) that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate. *Ulrich v. City and County of San Francisco, 308 F.3d 968, 984-85 (9th Cir. 2002); Menotti v. City of Seattle, 409 F.3d 1113, 1147 (9th Cir. 2005).* [*18] A municipal policy may be inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded. *Menotti, 409 F.3d at 1147* (internal quotation marks omitted). A municipality can also be liable for an isolated constitutional violation when the person causing the violation has "final policymaking authority." *Christie v. Iopa, 176 F.3d 1231, 1235 (9th Cir. 1999).* Whether an official has final policymaking authority is a question for the court to decide based on state law. Id. Here, Womack does not point to a municipal policy to support his Monell claim; rather, he bases this claim on the ground that the alleged constitutional deprivations were caused by the decisions of County officials with final policymaking authority.

The framework for determining whether an official qualifies for *Eleventh Amendment* immunity in *§ 1983* claims was established by the United States Supreme Court in *McMillian, 520 U.S. 781, 117 S. Ct. 1734, 138 L. Ed. 2d 1.* First, a court should "ask whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue." *Id. at 785.* Second, the actual function [*19] of a governmental official, in a particular area, depends "on the definition of the official's functions under relevant state law." *Id. at 786.* While state law serves as valuable evidence for this determination, federal courts need not blindly accept the California Supreme Court's "balancing of the different provisions of state law in determining liability under *§ 1983.*" *Weiner v. San Diego County, 210 F.3d 1025, 1029 (9th Cir. 2000).* The federal analysis of state law to determine *§ 1983* liability includes an inquiry into the "state's constitution, statutes, and case law." *Brewster v. Shasta County, 275 F.3d 803, 806 (9th Cir. 2001).* Thus, while "[t]he California Supreme Court is the ultimate interpreter of California state law[,]" *Weiner, 210 F.3d at 1028-29,* when determining a county's liability under McMillian, federal courts engage in an "independent analysis of California's constitution, statutes and case law." See *Streit v. County of Los Angeles, 236 F.3d 552, 561 (9th Cir. 2001).* Because *§ 1983* liability implicates federal, not state law, California case law is not controlling. *Id. at 564;* see *Owen v. City of Independence, 445 U.S. 622, 647 n.30, 100 S. Ct. 1398, 63 L. Ed. 2d 673 (1980)* ("Municipal defenses-including [*20] an assertion of sovereign immunity-to a federal right of action are, of course, controlled by federal law."). The determination of whether a county official acts for the state or for the county is a question of law. See *Jett v. Dallas Independent School Dist., 491 U.S. 701, 737, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989).*

In the present case, the County argues that it is immune from liability under the *Eleventh Amendment* on the basis that in California, a district attorney and his investigators act on behalf of the state rather than the county when engaged in investigating crime. Womack, for his part, maintains that the County is not immune from liability under the *Eleventh Amendment* because, under Ninth Circuit precedent, a district attorney (as a policymaker for the County with respect to obtaining and executing warrants) and/or his deputies and investigators (policymakers through delegation) act on behalf of the county rather than the state when investigating crime. Because the County does not dispute that the District Attorney has final policymaking authority over obtaining and executing warrants, [8] the County's *§ 1983* liability, turns, in part, on whether district attorneys and their investigators, when investigating [*21] crime, act on behalf of the state (which would immunize the County

from *§ 1983* liability), or on behalf of the county (which would subject the County to *§ 1983* liability).

    8  See *Bach v. County of Butte, 147 Cal.App.3d 554, 570, 195 Cal. Rptr. 268 (1983)* (concluding that the District Attorney is someone whose acts represent official policy).

Presently, as noted by the parties, there is a split in authority between the Ninth Circuit and the California Supreme Court with respect to whether a district attorney acts on behalf of the state or the county when investigating crime. Compare *Pitts v. County of Kern, 17 Cal.4th 340, 362, 70 Cal. Rptr. 2d 823, 949 P.2d 920 (1998)* (reviewing California's constitution, statutes and case law, and concluding that a district attorney represents the state rather than the county when preparing to prosecute and when prosecuting crimes, and when establishing policy and training in such areas); with *Bishop Paiute Tribe v. County of Inyo, 291 F.3d 549, 562-565 (9th Cir. 2002)* (reviewing California's constitution, statutes and case law, and concluding that a district attorney represents the county rather than the state when engaging in investigatory conduct (e.g., obtaining and executing search warrants) as opposed **[*22]** to prosecutorial conduct) vacated and remanded on other grounds by *Inyo County v. Paiute-Shoshone Indians of the Bishop Community of the Bishop Colony, 538 U.S. 701, 123 S. Ct. 1887, 155 L. Ed. 2d 933 (2003)*. [6] Following Bishop, the California Supreme Court clarified its holding in Pitts by explaining that a district attorney represents the state, and is not considered a policymaker for the county, when prosecuting crimes and when preparing to prosecute crimes, including investigating crimes in advance of prosecution. See *Venegas v. County of Los Angeles, 32 Cal. 4th 820, 832-33, 11 Cal. Rptr. 3d 692, 87 P.3d 1 (2004)*. In Venegas, the California Supreme Court stated that the "precise holding [in Pitts] was that a district attorney 'is a state official *when preparing to prosecute* and when prosecuting criminal violations of state law[.]' " which is "clearly confined . . . to situations in which district attorneys . . . are actually engaged in performing law enforcement duties, such as investigating and prosecuting crime, or training staff and developing policy involving such matters." *Venegas, 32 Cal.4th at 838-39* (emphasis in original). [10] In Pitts, Bishop and Venegas, both the Ninth Circuit and the California Supreme Court applied the analytical framework **[*23]** set forth in McMillian, but nonetheless reached conflicting conclusions. Thus, the question becomes which analysis the court should follow.

    9  See also *Weiner, 210 F.3d at 1030* (applying the McMillian analytic framework and concluding that, as a matter of law, based upon California's constitution, statutes and case law, a county

district attorney acts as a state official when engaging in prosecutorial conduct (e.g., a district attorney represents the state when deciding whether to prosecute an individual)).

    10  In clarifying Pitts, the California Supreme Court expressly criticized the distinction drawn by Bishop between a district attorney prosecuting crime on the one hand and investigating crime on the other; observing that a district attorney acts on behalf of the state when investigating crimes in advance of prosecution because: " '[n]o meaningful analytical distinction can be made between . . . prosecuting crime on the one hand, and training/policymaking regarding criminal investigation and prosecution on the other[.] Indeed, a contrary rule would require impossibly precise distinctions.'" See *Venegas, 32 Cal.4th at 833, 837-39*.

In the present case, the court finds the Ninth Circuit's **[*24]** reasoning in *Bishop* to be persuasive. [11] Although the Ninth Circuit's McMillian analysis in Bishop pre-dated the California Supreme Court's analysis in Venegas, and therefore lacked the benefit of the analysis by the state's highest court, ultimately the holding in Venegas is only binding on state courts because the ultimate issue-whether or not California district attorney's are subject to liability under *§ 1983* when investigating crime-is a question of federal law even though it requires the application of some principles of state law to resolve it. *Streit, 236 F.3d at 560* ("The question of municipal liability under *section 1983* is one of federal law."). Thus, while *Venegas* and *Pitts* are relevant in this court's "analysis of state law" as required by *McMillian*, these cases do not overturn the Ninth Circuit's reasoning in Bishop on the ultimate question under the federal statute. Accordingly, until Bishop is overturned by a panel of the Ninth Circuit or the United States Supreme Court, the Ninth Circuit's reasoning in *Bishop* is persuasive authority for this court. Therefore, because the Ninth Circuit in Bishop squarely addressed the issue of whether a district attorney acts on behalf **[*25]** of the state rather than the county when investigating crimes, and concluded, after applying the McMillian analytical framework, that a district attorney acts for the county when engaging in investigatory acts, *Bishop, 291 F.3d at 562-65*, the court concludes that the district attorneys and the district attorney investigator in this action are not immune from liability under the *Eleventh Amendment* and the doctrine of sovereign immunity for their acts in connection with obtaining and executing the search warrants at issue. [12] As such, the County is not immune from *§ 1983* liability.

    11  While the court recognizes that the *Bishop* decision has no precedential authority because it has been vacated, *Durning v. Citibank, N.A., 950*

F.2d 1419, 1424, n.2 (9th Cir. 1991), it nonetheless finds the case to have persuasive value. *DHX, Inc. v. Allianz AGF MAT. Ltd., 425 F.3d 1169, 1176 (9th Cir. 2005)* (observing that "at minimum, a vacated opinion still carries informational and perhaps even persuasive or precedential value"); see also *County of Los Angeles v. Davis, 440 U.S. 625, 646 n.10, 99 S. Ct. 1379, 59 L. Ed. 2d 642 (1979)* (Powell, J., dissenting) (asserting that the opinion of the court of appeals, though vacated, "will continue [*26] to have precedential weight and, until contrary authority is decided, [is] likely to be viewed as persuasive authority if not the governing law of the [ ] Circuit").

12  Although this case differs from Bishop insofar as Womack was indicted at the time of the second search, this search, like the search in *Bishop,* was an investigative rather than prosecutorial function because it went beyond gathering evidence for the prosecution of Womack for environmental crimes as it sought evidence of whether KRL was permeated with fraud. See *KRL v. Moore, 384 F.3d 1105, 1113-114 (9th Cir. 2004)* (concluding that the collateral investigation into whether KRL was permeated with fraud was an investigative rather than prosecutorial function because it went beyond any legitimate preparation to prosecute Womack for any crime in the removal of the storage tank or other crime charged in the indictment. Specifically, the court concluded that the defendants conduct in connection with the collateral investigation was not protected by absolute immunity "because defendants were 'engage[d] in behavior typically associated with police work [such as] pursuing leads, exploratory fact gathering, and searching for evidence' [*27] "). Accordingly, because obtaining and executing the second search warrant was an investigative rather than a prosecutorial function, the district attorneys and their investigator acted on behalf of the county rather than the state with respect to such conduct, and therefore are not entitled to sovereign immunity under the *Eleventh Amendment.*

Nevertheless, the court concludes that Womack's Monell claim fails because there is no direct evidence before the court of the existence of an unconstitutional policy, nor is there any evidence of a pattern of municipal activity on the part of the County. No other incidents are described. Nor is there proof that the alleged constitutional deprivations were caused by an existing, unconstitutional municipal policy, which can be attributed to a municipal policymaker. See *City of Okl. City v. Tuttle, 471 U.S. 808, 824, 105 S. Ct. 2427, 85 L. Ed. 2d 791*

*(1985)* (while a municipality may be liable under Monell for a single incident where the person causing the violation has "final policymaking authority" (e.g., District Attorney). "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that [*28] it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."). In this case, Womack asserts that his *Fourth Amendment* rights were violated based on: (1) District Attorney Cilenti's decision to assign Hall as the lead investigator despite his inexperience investigating environmental crimes; and (2) District Attorney Riebe's decision to seek evidence of new crimes in the "second search warrant." [13] These alleged incidents of unconstitutional activity are insufficient to establish municipal liability because there is no evidence that the alleged deprivations were caused by an existing, unconstitutional municipal policy, which can be attributed to a municipal policymaker.

> 13   In this regard, Womack alleges that his *Fourth Amendment* rights were violated because Riebe knew that the affidavit in support of the second search warrant did not establish probable cause for the issuance of a search warrant to search for evidence of new crimes.

To the extent that Womack attempts to argue that municipal liability attaches based upon the notion that Cilenti and Riebe ratified the unconstitutional conduct of subordinates, the court rejects [*29] this argument. Womack did not proffer evidence demonstrating that either Cilenti or Riebe ratified a subordinate's decision and the basis for it, and had knowledge of the alleged constitutional violation and actually approved it. See *Christie, 176 F.3d 1231, 1239.* (while a municipality may be liable under Monell for a single incident where a final policymaker ratifies a subordinates decision, ratification requires proof that an authorized policymaker has approved the subordinates decision and the basis for it, and has knowledge of the alleged constitutional violation and actually approves it). The mere assignment of Hall as an investigator, without more, is insufficient to support municipal liability predicated upon a ratification theory. Nor is Riebe's decision to seek evidence of new crimes in the "second search warrant," without more, sufficient evidence to support municipal liability predicated upon a ratification theory. Riebe's refusal to overrule a subordinate's completed act (i.e., the affidavit prepared by Irey and Moore in support of the second search warrant) does not constitute approval to support Monell liability. [14] See *Weisbuch v. County of Los Angeles, 119 F.3d 778, 781-82 (9th Cir. 1997)* [*30] ("To hold cities liable under *section 1983* whenever policymakers fail to overrule the unconstitutional discretionary acts of subor-

dinates would simply smuggle *respondeat superior* liability into *section 1983.*") (citation and internal quotation marks omitted). Additionally, to the extent that Womack argues that municipal liability attaches to the County based upon the notion that Irey, Hall or Moore exercised policymaking authority on behalf of the County over obtaining and executing the search warrants at issue, the court finds this argument unpersuasive. Womack cites neither facts nor law to support the proposition that, as a matter of state law, a deputy district attorney, or a district attorney investigator, or a California Highway Patrol Officer are individuals whose acts represent official County policy, i.e., Womack failed to demonstrate that Irey, Hall or Moore had the authority to make final policy over obtaining and executing search warrants or that their edicts or acts in this regard may be fairly said to represent official policy of the municipality. See *Trevino v. Gates,* 99 *F.3d 911, 920 (9th Cir. 1996)* (concluding that police officers are not officials with final policy-making **[\*31]** authority); *Bach, 147 Cal.App.3d at 570* (concluding that while a District Attorney is someone whose acts represent official policy, this rule does not extend to deputy district attorneys (or municipal employees other than elected representatives or departmental supervisors) because it would cause municipalities to be routinely liable for the tortious acts of employees who violate constitutional rights violating the teachings of Monell, namely that there is no respondeat superior liability under *§ 1983*). Moreover, the court finds that Womack failed to designate specific facts raising the existence of a genuine issue of material fact as to whether final policymaking authority was ever delegated to Irey, Hall or Moore. The mere assignment of Irey, Hall and Moore to investigate Womack by the District Attorney, without more, is insufficient to establish a genuine issue of material fact as to whether final policy-making authority was delegated to Irey, Hall or Moore. [15] Finally, the court finds that Womack's failure to train/supervise theory of municipal liability fails because he did not proffer evidence demonstrating that the alleged inadequacy of training or supervision was the result **[\*32]** of a "deliberate" or "conscious" choice. While a local government may be liable for constitutional violations resulting from its failure to supervise, monitor or train, liability only attaches where the inadequacy of said supervision, monitoring or training amounts to deliberate indifference to the rights of the people with whom the local government comes into contact. See *City of Canton v. Harris,* 489 *U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412(1989)*; *Long v. County of Los Angeles,* 442 *F.3d 1178, 1188-89 (9th Cir. 2006)*; see also *Alexander v. City and County of San Francisco,* 29 *F.3d 1355, 1367 (9th Cir. 1994)* (absent evidence showing that the alleged inadequacy in training was the result of a "deliberate" or "conscious" choice, any shortfall in training can only be

classified as negligence on the part of the municipal defendant-a much lower standard of fault than the deliberate indifference necessary to establish a municipal policy).

14    In *KRL,* 384 *F.3d at 1116-117,* the Ninth Circuit held that Riebe was entitled to qualified immunity for his approval of the January 11 warrant (i.e., the second search warrant) because it was not "so lacking in indicia of probable cause as to render official belief in its existence **[\*33]** unreasonable." In doing so, the Ninth Circuit implicitly recognized that reasonable minds could disagree as to whether probable cause supported the second search warrant and affidavit. See *KRL v. Estate of Moore,* 512 *F.3d 1184, 1191 (9th Cir. 2008).*

15    An official delegates final policymaking authority when it delegates final authority to establish municipal policy with respect to the challenged action, not when it delegates discretion to act on the municipalities behalf. *Christie,* 176 *F.3d at 1236.* In making this determination, courts consider whether the official's discretionary decision is constrained by policies not of that official's making and whether the official's decision is subject to review by the municipality's authorized policymakers. Id. Because Womack failed to proffer evidence demonstrating that Irey, Hall or Moore had final authority to establish municipal policy over obtaining and executing search warrants, or that they were not constrained by policies not of their making, or that their decisions regarding obtaining and executing search warrants were not subject to review by the District Attorney, municipal liability does not attach to the County under *§ 1983* for the **[\*34]** conduct of Irey, Hall and Moore for their conduct in connection with obtaining and executing the search warrants at issue.

For these reasons, summary adjudication of Womack's *Fourth Amendment* claims is appropriate.

**D. Malicious Prosecution**

The County argues that summary adjudication of Womack's malicious prosecution claim is appropriate because Womack failed to proffer evidence establishing a genuine issue of material fact as to whether the prior criminal prosecution was pursued to a favorable termination.

The general rule is that a malicious prosecution claim is not cognizable under *§ 1983* if process is available in the state judicial system to provide a remedy. *Usher v. City of Los Angeles,* 828 *F.2d 556, 561 (9th Cir.*

1987). Nonetheless, "an exception exists to the general rule when a malicious prosecution is conducted with the intent to deprive a person of equal protection of the laws or is otherwise intended to subject a person to a denial of constitutional rights." *Bretz v. Kelman, 773 F.2d 1026, 1031 (9th Cir. 1985)* (en banc). Thus, a malicious prosecution plaintiff "must show that the defendants prosecuted her with malice and without probable cause, and that they did so for the **[*35]** purpose of denying her equal protection or another specific constitutional right." *Freeman v. City of Santa Ana, 68 F.3d 1180, 1189 (9th Cir. 1995)*.

A malicious prosecution claim under § 1983 is based on state law elements. See *Usher, 828 F.2d at 562*. In California, the malicious prosecution plaintiff must plead and prove that the prior proceeding commenced by or at the direction of the malicious prosecution defendant, was: (1) pursued to a legal termination favorable to the plaintiff; (2) brought without probable cause; and (3) initiated with malice. *Villa v. Cole, 4 Cal. App. 4th 1327, 1335, 6 Cal. Rptr. 2d 644 (1992); Sagonowsky v. More, 64 Cal. App. 4th 122, 128, 75 Cal. Rptr. 2d 118 (1998)*. If a plaintiff cannot establish any one of these three elements, his malicious prosecution action will fail. *Staff-Pro, Inc. v. Elite Show Services, Inc., 136 Cal.App.4th 1392, 1398, 39 Cal. Rptr. 3d 682 (2006)*.

With respect to the element of favorable termination, this element "requires a termination reflecting the merits of the action and plaintiff's innocence of the misconduct." *Pattiz v. Minye, 61 Cal.App.4th 822, 826, 71 Cal. Rptr. 2d 802 (1998)*. A termination is "not necessarily favorable simply because the party prevailed in the prior proceeding; the termination must relate **[*36]** to the merits of the action by reflecting either on the innocence of or lack of responsibility for the misconduct alleged against him." *Sagonowsky, 64 Cal.App.4th at 128*. "If the resolution of the underlying action leaves some doubt concerning plaintiff's innocence or liability, it is not a favorable termination sufficient to allow a cause of action for malicious prosecution." *Pattiz, 61 Cal. App. 4th at 826*. "It is hornbook law that the plaintiff in a malicious prosecution action must plead and prove that the prior judicial proceeding of which he complains terminated in his favor.'" *Sagonowsky, 64 Cal.App.4th at 128;* see *Awabdy v. City of Adelanto, 368 F.3d 1062, 1068 (9th Cir. 2004)* (an individual seeking to bring a malicious prosecution claim must generally establish that the prior proceedings terminated in such a manner as to indicate his innocence. A dismissal in the interests of justice satisfies this requirement if it reflects the opinion of the prosecuting party or the court that the action lacked merit or would result in a decision in favor of the defendant.). "Favorable termination 'is an essential element of the tort of malicious prosecution, and it is strictly enforced.'"

**[*37]** *StaffPro, 136 Cal.App.4th at 1400*. The element of favorable termination in a malicious prosecution action is a legal question for the court to decide. *Id. at 1398*.

In the present case, the underlying action was the prosecution of Womack for environmental crimes allegedly committed during the removal and disposal of an underground storage tank. Following a search of Womack's residence and seizure of documents, Womack was indicted by a grand jury on twenty-one counts, most of which concerned the removal of the underground storage tank and actions related to its disposal. The prosecution of this action was subsequently terminated on a motion by the Attorney General's Office to dismiss all charges "in the interests of justice." Shortly thereafter, a civil enforcement action was instituted by the Attorney General's Office against Womack predicated upon the same facts as the criminal prosecution, seeking, among other things, civil penalties for the unlawful removal and disposal of the underground storage tank. [16] Womack maintains that a termination of the criminal prosecution "in the interests of justice" is sufficient to satisfy the favorable termination element of his malicious prosecution **[*38]** claim. In this regard, the court finds that Womack has failed to carry his burden to demonstrate that the prior criminal prosecution was pursued to a favorable termination. Specifically, Womack failed to proffer evidence demonstrating that the criminal prosecution was terminated in such a manner to reflect that the action lacked merit or would result in a decision favorable to Womack. Rather, Womack has baldly asserted, without citation to controlling authority, that a termination "in the interests of justice" is sufficient to satisfy the favorable termination element of his malicious prosecution claim at the summary judgment stage. [17] The court disagrees. [18] As the party bearing the burden of proof on this issue at trial, Womack was required, after the County pointed to the absence of evidence on this issue, to produce evidence indicating that the criminal prosecution terminated in such a manner to reflect the action lacked merit or would result in a decision favorable to Womack. Womack failed to do so. Accordingly, because the termination of the underlying prosecution leaves some doubt concerning Womack's innocence or liability, and because Womack failed to establish a genuine issue **[*39]** of material fact as to whether the underlying dismissal constitutes a favorable termination, the County is entitled to summary adjudication on Womack's malicious prosecution claim. See *Pattiz, 61 Cal.App.4th at 826-27* (summary adjudication is appropriate if a plaintiff cannot establish an element of his or her malicious prosecution claim). [19]

16   Decl. of Laurence L. Angelo, Exh. S.
17   In this regard, Womack relies on Awabdy. Such reliance, however, is misplaced because

2008 U.S. Dist. LEXIS 17844, *

*Awabdy* merely sets forth the standard for avoiding dismissal of a malicious prosecution claim at the pleading stage, not the production of evidence necessary to avoid summary judgment.

18  A dismissal of criminal proceedings "in the interests of justice," is generally not deemed a favorable termination because such a dismissal reflects ambiguously on the merits of the action, thus leaving open the question of defendant's guilt or innocence. *Minasian v. Sapse, 80 Cal.App.3d 823, 827 n.4, 145 Cal. Rptr. 829 (1978); see People v. Matthews, 7 Cal.App.4th 1052, 1056, 9 Cal. Rptr. 2d 348 (1992)* ("[D]ismissal [of a criminal indictment] in the interests of justice does not necessarily imply factual innocence, but rather may reflect the result of a negotiated or pragmatic **[\*40]** disposition of the case.").

19  Indeed, the fact that the Attorney General's Office instituted a civil enforcement action against Womack shortly after dismissing the criminal charges, predicated upon the same facts, suggests that the charges against Womack were not dismissed based on his innocence or lack of responsibility.

For these reasons, summary adjudication of Womack's malicious prosecution claim is appropriate.

### III. CONCLUSION

For the reasons stated above, the motion is **GRANTED.** Plaintiff's claims against the County of Amador are hereby **DISMISSED** with prejudice.

**IT IS SO ORDERED.**

ENTERED this 6th day of March, 20008.

s/ RALPH R. BEISTLINE

United States District Judge